AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS and DNC Services Corporation Democratic National Committee, Plaintiffs,

v.

FEDERAL ELECTION COMMISSION Defendant.

No. CIV.A. 01–1522(GK).

United States District Court, District of Columbia.

Dec. 19, 2001.

Michael B. Trister, Lichtman, Trister, Singer & Ross, Washington, DC, Laurence

Edward Gold, American Federation of Labor Congress of Industrial Organizations, Washington, DC, for AFL–CIO.

Michael B. Trister, Lichtman, Trister, Singer & Ross, Washington, DC, Laurence Edward Gold, American Federation of Labor Congress of Industrial Organizations, Washington, DC, Joseph Eric Sandler, Sandler & Reiff, P.C., Washington, DC, for DNC Services Corp. Democratic National Committee.

Stephen E. Hershkowitz, Colleen Tove Sealander, Leigh Gipson Hildebrand, Washington, DC, for Federal Election Commission.

Alan Page Dye, Webster, Chamberlain & Bean, Washington, DC, for The James Madison Center for Free Speech.

### MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiffs are the American Federation of Labor and Congress of Industrial Organizations ("AFL–CIO") and DNC Services Corporation/Democratic National Committee (collectively, "DNC"). They bring this action to prevent disclosure by Defendant, the Federal Election Commission ("FEC" or "Commission"), of approximately 6,000 pages of documents obtained during the FEC's investigation of Plaintiffs.

As a preliminary matter, this Court observes that this is a case in which, to put it colloquially, "what is sauce for the Democratic goose" will also be "sauce for the Republican gander." The legal issue raised in this case is critical to all players in the political arena because it concerns the FEC's statutory authority to disclose

to the public—and to political opponents—extraordinarily sensitive political information that would not be available in the absence of an investigation of complaints filed with the FEC. That information includes plans and strategies for winning elections, materials detailing political and associational activities, and personal information concerning hundreds of employees, volunteers and members of the Plaintiff organizations.

The matter is now before the Court on the Motions for Summary Judgment of Plaintiffs [# 15] and Defendant [# 29]. Upon consideration of the motions, oppositions, replies, the Motions Hearing held in this matter on November 1, 2001, the *amicus curiae* brief of the James Madison Center for Free Speech,[1] and the entire record herein, and for the reasons discussed below, the Court concludes that the FEC's decision to disclose the documents obtained during its investigation of Plaintiffs is arbitrary, capricious and contrary to law. The confidentiality mandate of the Federal Election Campaign Act ("FECA" or "Act"), 2 U.S.C. §§ 431–55, and the Commission's own implementing regulations, clearly prohibit the FEC from disclosing the more than 6,000 pages of documents in issue. Accordingly, the Court **grants** Plaintiffs' Motion for Summary Judgment and **denies** Defendant's Motion.[2]

### I. BACKGROUND

Plaintiffs AFL–CIO and DNC bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), to enjoin Defendant FEC from disclosing

---

1. The James Madison Center for Free Speech ("James Madison Center") is the educational arm of the James Madison Center, Inc., a non-profit corporation that supports litigation and public education activities involving First Amendment issues. The James Madison Center filed an *amicus curiae* brief in support of Plaintiffs.

2. The Court greatly appreciates the high quality of briefing and oral argument presented by counsel in this matter.

thousands of documents pertaining to its investigation of Plaintiffs. The FEC investigated Plaintiffs pursuant to complaints alleging that their activities in connection with the 1996 election year violated the Federal Election Campaign Act. Plaintiffs maintain that disclosure of documents pertaining to that investigation would violate the confidentiality provision of FECA, namely 2 U.S.C. § 437g(a)(12)(A); the Privacy Act, 5 U.S.C. § 552a(e)(7); Exemptions 3 and 7(C) of the Freedom of Information Act ("FOIA"), 5 U.S.C § 552(b)(3) and (7); and the First Amendment.

## A. Overview of the FEC's Enforcement of FECA [3]

The FEC is an independent, federal agency charged with the exclusive jurisdiction to administer and enforce FECA. FECA permits any person to file an administrative complaint with the FEC alleging violation thereof. 2 U.S.C. § 437g(a)(1). Once a complaint is filed alleging violations of FECA, the FEC notifies any and all respondents [4] and invites written responses. 2 U.S.C. § 437g(a)(1). The FEC then reviews the complaint and any responses filed thereto to determine whether there is "reason to believe" that a violation of FECA has occurred or is about to occur. 2 U.S.C. § 437g(a)(2). If the FEC determines that there is "reason to believe" that FECA has been or will be violated, it undertakes an "investigation" of the alleged violation. 2 U.S.C. § 437g(a)(2). After completion of an investigation, the Commission votes on

whether there is "probable cause" to believe FECA has been violated. 2 U.S.C. § 437g(a)(3). If the Commission finds that there is no probable cause to believe that a violation of FECA has occurred, the investigation is closed and the case is dismissed. Complainants may challenge this dismissal in federal district court. 2 U.S.C. § 437g(a)(8)(A). If, on the other hand, the Commission concludes that there is probable cause to believe that FECA has been violated, it must first attempt conciliation, and failing that, may seek enforcement of FECA in federal district court. 2 U.S.C. § 437g(a)(6)(A).

## B. The FEC's Investigation of Plaintiffs

Between December of 1995 and November of 1996, the FEC received eleven complaints alleging that Plaintiffs' activities in connection with the 1996 election year violated FECA. One complaint was filed by the National Republican Senatorial Committee, and the remaining ten were filed by the National Republican Congressional Committee and an independent political action committee chaired by Oliver L. North. Those complaints alleged that the AFL–CIO and its affiliated unions had coordinated their federal campaign activities with the Democratic Party, the White House, and individual candidates.

On June 17, 1997, upon review of the eleven complaints and Plaintiffs' written responses thereto, the Commission found "reason to believe" that Plaintiffs had violated FECA by making illegal in-kind contributions.[5] Thereafter, the Commission

---

**3.** The process by which the FEC enforces FECA is set forth fully in 2 U.S.C. § 437g, which is known as the "Enforcement" provision.

**4.** A respondent may be any person alleged in the complaint to have committed a violation of FECA. 2 U.S.C. § 437g(a)(1),(3).

**5.** Specifically, the Commission found reason to believe that union expenditures may have been converted into unlawful contributions in violation of 2 U.S.C. § 441b(a) because opportunities for "coordination" may have existed between the unions and various Democratic Party committees and candidates, including the DNC. The Commission found that there

undertook a formal "investigation" of Plaintiffs. On July 11, 2000, after a three-year investigation, the Commission determined that there was no "probable cause" to believe that FECA had been violated and dismissed the complaints against Plaintiffs.[6] Complainants did not appeal the FEC's dismissal.

### C. The FEC's Disclosure Decision

On April 19, 2001, the FEC notified Plaintiffs that it intended to make publicly available a portion of the investigatory file pertaining to the complaints filed against Plaintiffs. In particular, the FEC informed Plaintiffs that it planned to release some 6,000 pages from the FEC's investigatory file, which totals 45,000 to 55,000 pages.[7] The FEC planned to do so by transferring the following documents to microfiche and placing them in its Public Records Room: the eleven complaints filed with the Commission against Plaintiffs, including all attachments; Plaintiffs' responses to the complaints, including all supporting affidavits; all correspondence between Plaintiffs, their counsel and the FEC; motions submitted by parties to the FEC; answers to interrogatories and other discovery requests submitted to the FEC by respondents and witnesses; reports submitted to the FEC by General Counsel; and certifications of all actions taken by the Commission during its investigation.

was no reason to believe that the content of media advertisements and other public communications sponsored by the AFL–CIO violated FECA. *See* Pls.' Statement of Material Facts As To Which There is No Genuine Dispute ("Pls.' Statement") ¶ 7; Certified Administrative Record ("CAR"), Tab 34, p. 187.

6. During the pendency of the investigation, the FEC issued revised regulations in response to *FEC v. Christian Coalition,* 52 F.Supp.2d 45 (D.D.C.1999). *Christian Coalition* limited the circumstances under which the FEC could establish unlawful coordination of activities under FECA. The FEC dismissed the case against Plaintiffs subsequent to issuance of the revised regulations.

7. The 45,000 to 55,000 pages comprise responses to the numerous subpoenas issued by the FEC to Plaintiffs and to more than 150 individuals added to the case as respondents and as third-party witnesses during the course of the investigation of Plaintiffs. Among the respondents to the subpoenas were the White House, the Clinton/Gore '96 Campaign, the Democratic Senate Campaign Committee, the Democratic Congressional Campaign Committee, three of the AFL–CIO's political and media consultants, and more than 100 Democratic candidates for Congress whom the Commission added to the case as respondents. *See* Declaration of Michael B. Trister ("Trister Decl.") ¶¶ 7–8; Pls.' Statement ¶ 29.

The information submitted by respondents comprises narrative statements, declarations and documents concerning the AFL–CIO's television and radio advertisements and numerous other activities and incidents that the Commission believed may have presented opportunities for coordination between unions and Democratic candidates and committees, such as meetings involving AFL–CIO officers and Democratic officials. *See* Trister Decl. ¶ 9; Pls.' Statement ¶ 30.

A significant portion of the information, totaling many thousands of pages, relates to the Democratic Coordinated Campaign Plans for nearly every Democratic state party organization in the country. The Coordinated Campaign Plans are written plans and timetables for specific political operations, including voter-identification and get-out-the vote programs. The plans contain detailed information about the Democratic Party's strategy for winning elections in a given state, including the results of strategy discussions among party officials, calculations of how many voters in particular voting groups (*e.g.,* geographic, ethnic, gender) are needed to achieve Democratic victories, techniques for identifying voters, and strategies for how and when to contact groups of voters. Other materials in the investigative file include memoranda of internal deliberations among the DNC and its state Democratic Party organizations and consultants, as well as spreadsheets describing finance plans for the coordinated campaign operations. *See* Pls.' Statement ¶¶ 31, 33.

In three separate letters, of May 4, May 8, and May 11, 2001, Plaintiffs requested that these documents not be made public and explained that they believed disclosure would violate, *inter alia*, a confidentiality provision of FECA, namely § 437g(a)(12)(A). That provision states in full:

> Any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.

2 U.S.C. § 437g(a)(12)(A). Plaintiffs further explained that the proposed disclosure would reveal confidential and highly sensitive information about how the Democratic Party carries out its political programs and about the AFL–CIO's political activities, strategies and tactics.[8] Plaintiffs also argued that because the documents contain names and identifying information of hundreds of Plaintiffs' employees, officials, and volunteers, disclosure would violate FOIA Exemptions 4 and 7(C).[9]

The FEC denied Plaintiffs' requests on July 10, 2001, on the grounds that FECA and FOIA required disclosure of the investigative file.[10] Plaintiffs filed this action seeking to enjoin disclosure of these documents. On July 17, 2001, the Court entered a preliminary injunction, which was consented to by all parties and which prohibited disclosure of the documents in question.[11]

## II. STANDARD OF REVIEW

The parties have filed motions for summary judgment. Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Furthermore, because this action is a challenge to the FEC's decision to disclose documents, it, like other agency actions, is reviewed under the arbitrary and capricious standard of the APA. *See* 5 U.S.C. § 706(2)(A).

---

8. For example, among the materials to be disclosed are the Coordinated Campaign Plans for North Carolina, Nebraska and Ohio. As explained in note 7 *supra*, these plans contain confidential and sensitive information about the Democratic Party's strategies for winning elections in those states. *See* Pls.' Statement ¶ 31.

9. In particular, Plaintiffs maintain that disclosure would embarrass these persons and have an adverse effect on their ability to recruit individuals as employees, members or volunteers in the future. *See* Pls.' Statement ¶¶ 34–35.

10. The Commission voted to release on July 17, 2001, a copy of the same materials to an Associated Press reporter pursuant to a FOIA request. *See* Def.'s Statement of Material Facts ("Def.'s Statement") ¶ 37.

11. Parties consented to an entry of a preliminary injunction and to disclosure of the following four documents: (1) the FEC's two-page "Certification" of its decision to dismiss the case against Plaintiffs, dated July 12, 2000; (2) the 51–page General Counsel's Report of June 12, 2000, recommending that the FEC dismiss the complaints against Plaintiffs; (3) the Statement of Reasons issued by Commissioner Scott E. Thomas on September 5, 2000, setting forth the reasons for dismissal; and (4) the conciliation agreement between the FEC and the Democratic Republican–Independent Voter Education Committee ("DRIVE"). *See* July 16, 2001 Preliminary Injunction Order at 2; *see* Transcript of Hearing for Motion for Temporary Restraining Order at 4:12–16.

## III. ANALYSIS

### A. The FEC's Disclosure Decision Is Not Entitled to *Chevron* Deference Because The Plain Meaning of § 437g(a)(12)(A) Prohibits Disclosure.

Plaintiffs' principal argument is that § 437g(a)(12)(A) of FECA, which is the statute's confidentiality provision, unambiguously prohibits disclosure of the investigative file. As this case involves the question of the FEC's interpretation of a provision of FECA, the Court proceeds according to the familiar two-step inquiry of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ Under the first step of *Chevron*, the reviewing court must ascertain the plain meaning of the statute. To that end, a court "must first exhaust the 'traditional tools of statutory construction,' to determine whether Congress has spoken to the precise question at issue." *Natural Resources Defense Council, Inc. v. Browner*, 57 F.3d 1122, 1125 (D.C.Cir.1995)(quoting *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778). In particular, a court considers the text of the particular provision under examination, its statutory context, and its purpose. *American Bankers Association v. National Credit Union Administration*, 271 F.3d 262, 265 (D.C.Cir.2001); *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1014 (D.C.Cir.1999); *Southern California Edison Co. v. FERC*, 116 F.3d 507, 515 (D.C.Cir.1997); If this search yields a clear result, then Congress has expressed its intention as to the question, and deference is not appropriate. *See Hammontree v. NLRB*, 894 F.2d 438, 441 (D.C.Cir.1990). If, however, "the statute is silent or ambiguous with respect to the specific issue," *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778, Congress has not spoken clearly, and the Court proceeds to the second step of *Chevron*. At that stage, a permissible agency interpretation of the statute merits judicial deference. *Id.*

■ As discussed below, upon examination of the traditional tools of statutory construction, including a review of the text, legislative purpose, and statutory context of § 437g(a)(12)(A), the Court concludes that the plain meaning of § 437g(a)(12)(A) clearly prohibits disclosure of the investigative documents in issue.

#### 1. Text of § 437g(a)(12)(A)

The first "traditional tool of statutory construction" is examination of the text. Section 437g(a)(12)(A) provides that:

> Any notification or *investigation* made under this section *shall not be made public* by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.

2 U.S.C. § 437g(a)(12)(A)(emphasis added).

It is undisputed by the parties that this section clearly prohibits the FEC from disclosing information concerning on-going investigations under any circumstances without the written consent of the subject of the investigation. *See also In re Sealed Case*, 237 F.3d 657, 667 (D.C.Cir.2001). It is also undisputed that the FEC seeks to make information concerning the investigation of Plaintiffs public and that Plaintiffs have not consented to such disclosure. In light of this, the FEC recognizes that § 437g(a)(12)(A) would ordinarily bar disclosure of the documents at issue, but contends that disclosure is nevertheless appropriate because § 437g(a)(12)(A) ceases to apply and, in effect, expires once an investigation ends. *See* Transcript of Motions Hearing of November 1, 2001 ("Mo-

tions Hearing Tr.") at 37:12–14 ("[I]t is the Commission's long-standing interpretation of [437g(a)(12)(A) ] that it applies only to on-going enforcement actions . . . [.]").

However, there is absolutely nothing in the text of § 437g(a)(12)(A) to suggest that its protections lapse as soon as the FEC terminates its investigation. Section 437g(a)(12)(A) contains no language limiting its effect to a discrete period of time. It is a cardinal principle of statutory construction that statutes or sections thereof, once enacted and unless explicitly providing to the contrary, continue in force until abrogated by subsequent action of the legislature. *See* 2 Norman J. Singer, Sutherland Statutory Construction § 34.1 (6th ed.2001). Had Congress intended § 437g(a)(12)(A) to expire upon the conclusion of an FEC investigation, it certainly knew how to draft language to accomplish that goal.

Furthermore, to permit the FEC to read a temporal limit into the protections of § 437g(a)(12)(A) would afford the Commission greater authority to disclose confidential information than Congress expressly authorized by statute. *See In re Sealed Case,* 237 F.3d at 670 ("Agencies are not empowered to carve out exceptions to statutory limits on their authority.")(relying on *Railway Labor Executives' Ass'n v. Nat'l Mediation Bd.,* 29 F.3d 655, 671 (D.C.Cir. 1994)(en banc) ("Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron.*")).

### 2. Congressional Purpose

■ An examination of the purpose behind § 437g(a)(12)(A) strengthens the conclusion that it applies whether an FEC investigation is on-going or closed. The undisputed purpose of § 437g(a)(12)(A) is to protect an innocent accused party from disclosure of the fact of investigation. *See In re Sealed Case,* 237 F.3d at 667 (D.C.Cir.2001)("plain language of [437g(a)(12)(A) and implementing regulations] . . . create a strong confidentiality interest analogous to that protected by Fed. R. of Criminal Procedure 6(e)(6). In both contexts, secrecy is vital to protect an innocent accused who is exonerated from disclosure of the fact that he has been under investigation.").

There is no reason to conclude that this confidentiality interest applies with less force or ceases to apply at all once an investigation ends. To the contrary, the confidentiality interest of an innocent accused is, if anything, greater once an investigation is closed and that innocent party is *exonerated* from all charges. Thus, Defendant's position of maintaining the confidentiality of all investigative materials pertaining to an accused while under investigation, but then disclosing that very same information once the accused has been exonerated, runs counter to the Congressional intent to protect innocent parties that animates § 437g(a)(12)(A).

### 3. Statutory Context

Review of the statutory context of § 437g(a)(12)(A) further demonstrates that the FEC's interpretation is contrary to the plain meaning of § 437g(a)(12)(A).

### a. The FEC's Interpretation Renders Other Sections of § 437g Superfluous

Defendant's reading would render other sections of § 437g superfluous. *See Arkansas Best Corp. v. CIR,* 485 U.S. 212, 218, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988)(an interpretation of statutory provision that renders another superfluous cannot be correct). For example, although § 437g(a)(12)(A) contains no time limit, it does contain an exception, which would be rendered totally unnecessary under Defen-

dant's interpretation. That exception is contained in § 437g(a)(4)(B)(ii), which provides that:

> If a conciliation agreement is agreed upon by the Commission and the respondent, the *Commission shall make public any conciliation agreement signed by both the Commission and the respondent.* If the Commission makes a determination that a person has not violated this Act or chapter 95 or chapter 96 of Title 26, *the Commission shall make public such determination.*

2 U.S.C. § 437g(a)(4)(B)(ii)(emphasis added).

As this language reveals, § 437g(a)(4)(B)(ii) permits only two disclosure exceptions to § 437g(a)(12)(A)'s general prohibition on disclosure: conciliation agreements and determinations of nonviolation of FECA. Defendant, however, maintains that *all* information in the investigative file may be released because § 437g(a)(12)(A) no longer applies once an investigation ends. If Defendant is correct, then there would be no need for § 437g(a)(4)(B)(ii), which expressly limits release of materials to the "conciliation agreement" and an FEC "determination" of nonviolation.

### b. The FEC's Interpretation Contradicts the Plain Language of Other Sections in § 437g.

The FEC argues that § 437g(a)(4)(B)(ii), rather than functioning as an exception to § 437g(a)(12)(A), serves to terminate its protections once the FEC closes a case.[12] The FEC concludes that § 437g(a)(4)(B)(ii) is, in effect, the statutory vehicle that permits disclosure of the entire investigative file.[13] *See* Motions Hearing Tr. 37:16–19 ("The primary reason that the Commission

---

**12.** Specifically, the FEC argues that disclosure of a "determination" (*e.g.*, the Certification, General Counsel's Report, and Statement of Reasons) will reveal the fact that a respondent was "investigated" by the FEC. The FEC asserts that the only purpose of § 437g(a)(12)(A) is to protect this particular fact (*i.e.*, the occurrence of an investigation). The FEC maintains that once this fact is disclosed, the need for the continued applicability of § 437g(a)(12)(A) is obviated and therefore disclosure of the *investigative file* is permissible under § 437g(a)(4)(B)(ii). Motions Hearing Tr. at 41:10–17 ("[the determination] reveal[s] the fact that the AFL–CIO and the DNC were investigated...There is nothing left from § 437g(a)(12)(A) to protect once any of the four documents [included in the "determination"] is released.").

**13.** The Court notes that the FEC did not flesh out this argument until its reply brief. Moreover, its rationale represents a shift from its original justification for disclosure. In May of 2001, and again in July of 2001, when the Commission rejected Plaintiffs' requests to keep the investigative files confidential, the FEC asserted as bases for disclosure § 437g(a)(12)(A), its implementing regulations, and its public disclosure regulations, 11 C.F.R. §§ 5.4(a)(3) and (4). *See* CAR, Tab 12, pp. 43–44; Motions Hearing Tr. at 15:7–25. By contrast, in its reply and at the Motions Hearing, the FEC argued that disclosure is permitted because § 437g(a)(4)(B)(ii) actually terminates the applicability of § 437g(a)(12)(A).

Furthermore, as will be discussed in Section III.B *infra*, the FEC's own regulations demonstrate that § 437g(a)(4)(B)(ii), rather than terminating the protections of § 437g(a)(12)(A), operates only as a limited exception to that section. The FEC regulations show that, until now, the FEC has consistently treated the two provisions in that manner (*i.e.*, as a broad protective rule and an exception).

For example, 11 C.F.R. § 111.21, which the FEC promulgated to implement § 437g(a)(12)(A), expressly treats 11 C.F.R. § 111.20(a), which was promulgated to implement § 437g(a)(4)(B)(ii), as an exception: *"Except as provided in 11 C.F.R. 111.20,* no complaint filed with the Commission, nor any notification sent by the Commission, nor any investigation conducted by the Commission, nor any findings made by the Commission shall be made public by the Commission..." (emphasis added). 11 C.F.R. § 111.21(a).

has concluded that section 437g(a)(12)(A) doesn't apply to closed investigations is section 437g(a)(4)(B)(ii)."); Def.'s Reply to its Memorandum in Support of its Motion for Summary Judgment ("Def.'s Reply") at 3 ("[T]he disclosure required by section 437g(a)(4)(B)(ii) exhausts the entire substance of what section 437g(a)(12)(A) requires to be kept confidential: the notification and investigation."). The FEC's sweeping interpretation of § 437g(a)(4)(B)(ii) to permit disclosure of the entire investigative file is incorrect because it is inconsistent with the plain language of that section.

First, there is no express or clearly implied instruction in § 437g(a)(4)(B)(ii) extinguishing the applicability of § 437g(a)(12)(A). Section 437g(a)(4)(B)(ii) does not mention § 437g(a)(12)(A) or in any way indicate that it terminates any of its significant protections once an FEC investigation concludes.

Second, § 437g(a)(12)(A) prohibits disclosure of all information pertaining to an FEC "investigation." Section 437g(a)(4)(B)(ii), by contrast, permits disclosure of only the "determination." Section 437g(a)(4)(B)(ii) says nothing about permitting disclosure of information pertaining to the FEC's underlying "investigation" as well as its "determination." If Congress intended § 437g(a)(4)(B)(ii) to serve as the mechanism for disclosure of all files pertaining to an "investigation," it would have used the term "investigation," as it did in § 437g(a)(12)(A). *See* 2A Sutherland Statutory Construction § 46.05 ("Where the legislature has carefully employed a term in one place and excluded it

in another, it should not be implied where excluded.")

In fact, Defendant's view that § 437g(a)(4)(B)(ii) terminates § 437g(a)(12)(A)'s protections and permits disclosure of the investigation would require the Court to view "determination" as used in § 437g(4)(B)(ii) to be synonymous with "investigation" as used in § 437g(a)(12)(A). This, of course, it cannot do. *See e.g.*, 2A Sutherland Statutory Construction § 46.05 ("When the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

Furthermore, although "determination" is not defined anywhere in FECA, it is ordinarily used to describe a final outcome or decision.[14] Defendant's view of determination to permit full disclosure of information pertaining to the "investigation" is contrary to any plausible or ordinary use of the word "determination."

Defendant's sweeping view of "determination" is also contrary to its particular use in § 437g(a)(4)(B)(ii). For example, "determination" is used twice in § 437g(a)(4)(B)(ii), and both uses appear in the same sentence: "If the Commission makes a *determination that a person has not violated this Act* . . . the Commission shall make public such *determination* (emphasis added)." It is axiomatic that when Congress uses the same word twice in one sentence, that word has the same meaning both times. Here, it is clear that "shall make public such determination" refers to the determination of non-violation of FECA (*i.e.*, determination of no "probable

---

14. The term "determination" has been defined as "[a] final decision by a court or administrative agency." *See* Black's Law Dictionary 460 (7th ed.1999). "Determination" has also been defined as "the settling

and ending of a controversy especially by judicial decision: conclusion [or] decision." *See* Webster's Third New International Unabridged Dictionary 616 (1993).

cause") that is referred to earlier in the sentence.[15]

■ Moreover, the overall structure of § 437g reinforces the conclusion that the language "shall make public such determination" of § 437g(a)(4)(B)(ii) permits the limited disclosure of only those documents relating to the "determination" of no probable cause, not the raw investigative materials and information submitted by parties in confidence that are included in the "investigation" protected by § 437g(a)(12)(A).[16]

Therefore, Defendant's view of § 437g(a)(4)(B)(ii)—that it terminates the force and effect of § 437g(a)(12)(A) and justifies disclosure of the entire investigative file—fails because it flouts the plain language of § 437g(a)(4)(B)(ii).

In summary, based on a review of the text, legislative purpose, and statutory context of § 437g(a)(12)(A), the Court concludes that the plain meaning of § 437g(a)(12)(A) prohibits the FEC from disclosing the investigative file. For these reasons, the FEC's decision to disclose is not entitled to deference under the first step of *Chevron*, and is arbitrary, capricious and contrary to law because it violates the plain meaning of § 437g(a)(12)(A).

## B. The FEC's Decision is Arbitrary, Capricious and Contrary to Law Because it Violates the Implementing Regulations of § 437g(a)(12)(A).

■ The FEC's decision to disclose all investigative materials now that its investigation of Plaintiffs has ended is also arbitrary, capricious and contrary to law because it violates its own implementing regulations for § 437g(a)(12)(A). As an initial matter, it must be noted that an agency's interpretation of its own regulation will prevail unless it is inconsistent with the plain terms of the regulation. *See Everett v. United States* 158 F.3d 1364, 1367 (D.C.Cir.1998). For the reasons discussed below, the Court finds that the FEC's decision to disclose the investigative file flouts the plain language of its implementing regulations, and is therefore entitled to no deference.

Section 437g(a)(12)(A), the confidentiality provision at issue, is implemented by 11 C.F.R. § 111.21(a), which provides that:[17]

Except as provided in 11 C.F.R. § 111.20, no complaint filed with the Commission, *nor any notification sent by the Commission, nor any investigation conducted by the Commission, nor any findings made by the Commission shall be made public* by the Commission or by any person or entity *without the*

---

15. Parties agree that at a minimum, the documents to be disclosed under § 437g(a)(4)(B)(ii) as part of the "determination" include the Certification, the General Counsel's Report, and Commissioner's Statement of Reasons. *See* note 11 *supra*.

16. As explained in Section III.A., *supra*, § 437g provides the basic road map for the process the Commission follows in enforcing FECA. It is clear from this road map, that "determination" refers only to the probable cause determination, which is one among many discrete steps comprising the enforcement scheme of FECA as set forth in § 437g.

Specifically, once a complaint is received, the FEC proceeds along the following course: (1) "notification" of respondents, § 437g(a)(1); (2) "reason to believe" vote, § 437g(a)(2); (3) "investigation" of complaint, § 437g(a)(2); (4) probable cause "determination," §§ 437g(a)(3), (a)(4)(A); (5) "conciliation" attempts, § 437g(a)(4)(A)(i) and failing that, (6) an enforcement action in district court. § 437g(a)(6)(A).

17. The Court observes that Defendant has made only passing mention of 11 C.F.R. § 111.21(a) in its nearly 100 pages of briefing.

*written consent of the respondent with respect to whom the complaint was filed, the notification sent, the investigation conducted, or the finding made.* (emphasis added).

11 C.F.R. § 111.21(a)(emphasis added).

Significantly, the regulation refers to Commission notifications, investigations and findings in the past tense. Thus, because the regulation prohibits disclosure of information pertaining to notifications that have been "sent," investigations that have been "conducted," and subsequent findings that have been "made" by the FEC, it clearly protects all related documents even after an investigation has ended and a case is dismissed. Accordingly, the FEC's decision to disclose all materials simply because it closed the investigation and dismissed the case against Plaintiffs violates the clear mandate of 11 C.F.R. § 111.21(a).

The FEC argues that its decision to disclose is authorized by the exception referred to in 11 C.F.R. § 111.21(a), namely 11 C.F.R. § 111.20. That regulation provides in relevant part:

> If the Commission makes a finding of no reason to believe or no probable cause to believe or otherwise terminates its proceedings, it shall make public such action and the basis therefor no later than thirty (30) days from the date on which the required notifications are sent to complainant and respondent.

11 C.F.R. § 111.20(a). Relying exclusively on the language "[the FEC] shall make public such action and the basis therefor," the FEC argues that 11 C.F.R. § 111.20(a) permits disclosure of the entire investigatory file. The FEC's reading is erroneous for two reasons.

First, its sweeping reading of § 111.20(a) to permit disclosure of the en-

tire file would render 11 C.F.R. § 111.21(a) meaningless, as all documents that are confidential under § 111.21(a) could—at the same time—be disclosed under § 111.20(a). The exception would therefore swallow the rule.

Second, the FEC's reading contradicts the plain language of 11 C.F.R. § 111.20(a). That regulation requires the FEC to "make public such action and the basis therefor," if the FEC "makes a finding [of no reason to believe or no probable cause]...or otherwise terminates a proceeding." It is clear that the language "action and the basis therefor" refers to any stated reasons supporting a final decision of the FEC (*i.e.,* the Commission's Certification, the General Counsel's Report and the Commission's Statement of Reasons).[18] The regulation does not say that the administrative record, materials submitted by parties in confidence or years' worth of investigation may be disclosed as well.

Indeed, any reading along those lines would exceed the limits of disclosure permitted by the underlying statute. As discussed in section III.A. *supra,* § 437g(a)(4)(B)(ii), the statute implemented by § 111.20(a), permits disclosure in only two circumstances: signed conciliation agreements and FEC determinations of no violation. The FEC's interpretation of § 111.20(a) cannot exceed the limits on disclosure set forth in its governing statute. The FEC's interpretation of § 111.20(a) permitting disclosure of any and every document in the investigative file exceeds the express limits on disclosure set forth in § 437g(a)(4)(B)(ii).

Therefore, for the foregoing reasons, the Court concludes that the FEC's decision to disclose 6,000 pages of the investigative

---

**18.** In fact, when the agency promulgated these regulations in 1980, it described this language to mean "final Commission action." Motions Hearing Tr. at 12:15–19.

file is arbitrary, capricious and contrary to law because it violates 11 C.F.R. § 111.21(a).

### C. The FEC's Decision is Contrary to Law Because FOIA Exemption 7(C) Prohibits Disclosure of All Names and Identifying Information

Plaintiffs further contend that the FEC's decision is arbitrary, capricious and not in accordance with law under the APA because disclosure would violate Exemption 7(C) of FOIA. *See Campaign for Family Farms v. Glickman*, 200 F.3d 1180 (8th Cir.2000)(reverse FOIA claim may be brought under the APA to challenge an agency's release of documents under FOIA).

Exemption 7(C) protects information compiled for law enforcement purposes which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

Plaintiffs rely on Exemption 7(C) to protect the identities and personal information of third party individuals, such as officials, volunteers, members and employees of the DNC and AFL–CIO, who are referred to in the investigative files. Defendant offers two arguments in response to Plaintiffs' claim.

#### 1. Public Interest in Disclosure

Defendant's first argument is that the public interest in disclosure outweighs the privacy interest of individuals named in the investigative files. In particular, Defendant emphasizes that the public has an interest in the results of any FEC enforcement investigation and therefore the names contained in the investigatory file may be disclosed. The FEC also contends that disclosure will reveal "what the government is up to." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 750, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

The FEC's argument must fail, as this Circuit has established a *categorical* rule that an agency must exempt from disclosure the names of and identifying information about private individuals appearing in an agency's law enforcement files unless that information is necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity. *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C.Cir.1991).[19] In other words, names are exempt from disclosure—regardless of the public interest asserted—unless disclosure would bear directly on illegal agency activity. There are no claims of illegal agency activity in this case.[20]

#### 2. Public Domain

Defendant's second argument is that disclosure is permitted because much of the information is already in the public domain. Information exempt under FOIA, once in the public domain, may be disclosed, but only upon a showing that the proposed disclosure would be no greater

**19.** Specifically, the Circuit stated: "We now *hold categorically* that unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure (emphasis added)." *SafeCard*, 926 F.2d at 1206.

**20.** Furthermore, even assuming a public interest in the results of any FEC enforcement action and in "knowing what the government is up to," those results and the reasons why the FEC chose not to proceed against Plaintiffs have already been disclosed to the public in the General Counsel's Report and the Commissioners' Statements of Reasons. *See* July 16, 2001 Preliminary Injunction Order at 2.

than what is already publicly available. *See e.g., Davis v. U.S. Dep't of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992)(party bears the "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.").

■ Defendant argues that because some materials in connection with this investigation have already been disclosed, many names and identities contained in the investigative file are already publicly available.[21] However, even if some names and identifying information are in the public domain by virtue of the limited disclosure of documents occurring thus far, Defendant has not shown that the vast majority of the hundreds of names of individuals and third parties contained in the 6,000 pages of the investigative file are publicly available.[22] Defendant does not dispute this. Motions Hearing Tr. at 54:7–18.

Furthermore, even for those names that are known to be publicly available, for example, on the AFL–CIO website, Defendant has not met its burden of showing that the same degree of disclosure has occurred. For example, Defendant has not shown that the AFL–CIO website, on which the names of those persons appear, also discloses that they participated in political activities that were under investigation by the FEC or that they were interviewed or had their files searched as witnesses. Because Defendant has failed to meet its burden of showing that the same degree of disclosure proposed has already occurred, it must follow the categorical rule of *Safe-Card.*

---

**21.** These materials include four of the eleven administrative complaints, the names of the 4 complainants and 152 respondents, the General Counsel's Report, the conciliation agreement with DRIVE, and the Statement for the Record by Commissioner Thomas of September 5, 2000. Defendant also notes that some information is available on the AFL–CIO's own website. *See* Def.'s Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s Memo.") at 39–40.

**22.** Apparently recognizing that it cannot meet its burden of showing what identifying information is already public and what is not, Defendant asserts that all individuals named in the files have a "diminished expectation of privacy" because aspects of the FEC's statutory scheme favor disclosure. *See* Def.'s Memo at 41–44. Defendant's argument fails for the following reasons.

First, the unmistakable mandate of *Safe-Card* is that any names and identifying information of private individuals appearing in files within the ambit of Exemption 7(C) are exempt from disclosure. This rule is categorical.

Second, the FEC relies on the fact that federal campaign finance laws subject contributors and recipients of federal campaign dollars to disclosure requirements. However, this is irrelevant, as the individuals named in the investigatory files are neither contributors nor recipients, but rather employees, volunteers or members of Plaintiffs' organizations.

Third, it makes no difference that complainants may make their own complaints public. Most of the individuals named in the investigative files are not named in the complaints.

Fourth, it makes no difference that respondents may consent to disclosure of their own investigatory files, as consent was not given in this case.

Fifth, the fact that names of witnesses may be disclosed to respondents in a factual or legal analysis and probable cause brief, *see* 2 U.S.C. § 437g(a)(2)-(3), to which respondents have an opportunity to respond, does not mean that there is any occasion routinely to reveal the names of those witnesses to the general public.

Finally, the fact that the identities of witnesses could become available in the event that an FEC investigation is pursued in federal court, either by a complainant challenging dismissal of a complaint (§ 437g(a)(8)) or through an FEC enforcement action (§ 437g(a)(6)), is not relevant. Neither action was pursued in this case. Moreover, even where a matter continues to federal court, the identities of many individuals are routinely made subject to protective orders.

Accordingly, for the foregoing reasons, the FEC's refusal to apply Exemption 7(C) to bar release of the names and other identifying information of third-party individuals referred to in its investigative files is arbitrary, capricious and contrary to law.

\* \* \* \* \* \*

 As a final matter, the Court wishes to acknowledge several serious policy arguments raised by the parties. First, the Court is aware that this decision ends a twenty-five year practice by the FEC to make available to the public the full investigatory record pertaining to any complaint filed once that complaint is resolved. However, that result, as noted earlier, is compelled by the plain wording of § 437g(a)(12)(A) and 11 C.F.R. § 111.21(a). The mere practice of placing an investigatory file on public record is not entitled to judicial deference, especially when it violates the statute and regulation at issue. *See also In re Sealed Case, supra* (overturning long-standing practice of filing subpoena enforcement actions on public record because practice violated clear confidentiality mandate of § 437g(a)(12)(A) and concluding that agency practice of disclosure does not entitle agency to deference).

Second, Defendant argues that if § 437g(a)(12)(A) remains in effect after an investigation ends, any district court action pertaining thereto would have to remain sealed, leading to a body of secret case law and interfering with the FEC's litigation of other cases in federal court.

This policy concern, while legitimate, is presented only minimally in this case. With respect to the FEC's enforcement proceedings under § 437g(a)(6), the district court does not review the investigative file or the certified administrative record; in fact, there is no requirement that the administrative record even be filed with the district court. A § 437g(a)(6) lawsuit is a separate and independent proceeding that seeks to establish that a former respondent in an FEC administrative proceeding has violated FECA. It involves no review of either the underlying FEC investigation or the FEC's administrative enforcement decision, but instead requires fresh discovery and a determination of the facts *de novo*. Therefore, § 437g(a)(12)(A) has no effect on the ability of the FEC to prosecute these cases and no bearing on whether any decision would have to be sealed.

Nor will applicability of § 437g(a)(12)(A) interfere with litigation under § 437g(a)(8), when a complainant challenges dismissal or delay. First, this Circuit has already made clear that § 437g(a)(12)(A) protects all information in connection with one type of § 437g(a)(8) case, namely those cases challenging the FEC's failure to litigate within 120 days of the filing of a complaint. *See In re Sealed Case*, 237 F.3d at 667. As to the other type of § 437g(a)(8) case, namely those challenging the FEC's dismissal of a complaint, an entire record need not be sealed, as courts may issue protective orders to ensure that particular items of confidential information within the administrative record are protected. Moreover, these types of § 437g(a)(8) cases are extremely rare. *See* Motions Hearing Tr. at 26:23–25.

Finally, the Court turns to a critical issue raised by Plaintiffs and the *amicus curiae*, namely the potential effect of the Commission's disclosure practice on individuals and groups seeking to participate in political life.

 It has long been recognized that the Commission oversees an area where "'uninhibited, robust, and wide open' activity is constitutionally protected." *FEC v. Machinists Non–Partisan Politi-*

**64**

*cal League,* 655 F.2d 380, 387 (D.C.Cir. 1981), *cert denied,* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981). Moreover, the Commission's investigative and subpoena authority is of a different "constitutional character" from that of other federal agencies because the information obtained touches "the very heart of the organism which the first amendment was intended to nurture and protect: political expression and association..[.]" *Id.* at 388. Not surprisingly, courts have "meticulously scrutinized and substantially restricted" the Commission's actions and have subjected them to "extra-careful scrutiny." *Id.* In view of this overriding concern about infringement of political freedoms, it is clear that the FEC's practice of disclosing to the public information obtained pursuant to its investigative authority "carries with it a real potential for chilling the free exercise of political speech and association guarded by the first amendment." *Id.*

## IV. CONCLUSION [23]

For all the foregoing reasons, the Court **grants** Plaintiffs' Motion for Summary Judgment and **denies** Defendant's Motion for Summary Judgment.

---

**23.** Because the Court has found that disclosure would violate FECA, its implementing regulations, and FOIA Exemption 7(C), and is therefore arbitrary, capricious and not in accordance with law under the APA, it will not reach the merits of Plaintiffs' First Amendment or Privacy Act claims. This approach is consistent with the judicial preference for resolving matters on non-constitutional grounds.