Senator Mitch McCONNELL,
et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION,
et al., Defendants.

National Rifle Association of America,
et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Emily Echols, a minor child, by and through her next friends, Tim and Windy Echols, et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Chamber of Commerce of The United States, et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

National Association of Broadcasters,
Plaintiff,

v.

Federal Election Commission,
et al., Defendants.

American Federation of Labor and Congress of Industrial Organizations, et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Congressman Ron Paul,
et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Republican National Committee,
et al., Plaintiffs,

v.

Federal Election Commission,
et al.  Defendants.

California Democratic Party,
et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Victoria Jackson Gray Adams,
et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Representative Bennie G. Thompson,
et al., Plaintiffs,

v.

Federal Election Commission,
et al., Defendants.

Nos. 02–582 CKK, KLH, RJL, 02–581 CKK, KLH, RJL, 02–633 CKK, KLH, RJL, 02–751 CKK, KLH, RJL, 02–753 CKK, KLH, RJL, 02–754 CKK, KLH, RJL, 02–781 CKK, KLH, RJL, 02–874 CKK, KLH, RJL, 02–875 CKK, KLH, RJL, 02–877 CKK, KLH, RJL, 02–881 CKK, KLH, RJL.

United States District Court,
District of Columbia.

May 2, 2003.

See also 251 F.Supp.2d 176.

Edward W. Warren, Kenneth W. Starr, Grant M. Dixton, Kirkland & Ellis, Washington, DC, L. Lynn Hogue, pro hac vice, Harry W. MacDougald, pro hac vice, Valle Simms Dutcher, Southeastern Legal Foundation, Atlanta, GA, G. Hunter Bates, Goshen, KY, for Mitch McConnell, Bob Barr.

Kenneth W. Starr, Kirkland & Ellis, Washington, DC, for Mike Pence, Bill Pryor, Libertarian Nat. Committee, Inc., Alabama Republican Executive Committee, Libertarian Party of Ill., DuPage Political Action Council, Jefferson County Republican Executive Committee, Associated Builders and Contractors, Inc., Indiana Family Institute Club for Growth, Thomas McInerney, Martin Connors, Barret Austin O'Brock.

Mark J. Lopez, Amer. Civ. Liberties Union Foundation, New York City, Kenneth W. Starr, Kirkland & Ellis, Washington, DC, for American Civil Liberties Union.

Edward W. Warren, Kenneth W. Starr, Kannon Kumar Shanmugam, Grant M. Dixton, Kirkland & Ellis, Washington, DC, for Center for Individual Freedom, 60 Plus Ass'n, ProEnglish.

Kenneth W. Starr, Grant M. Dixton, Kirkland & Ellis, Washington, DC, for National Right to Life Committee Educational Trust Fund.

Cleta Deatherage Mitchell, Foley & Lardner, Washington, DC, Charles Justin Cooper, Cooper & Kirk, PLLC, Washington, DC, for National Rifle Ass'n of America, NRA Political Victory Fund.

James Matthew Henderson, Sr., American Center for Law & Justice, Washington, DC, for Tim Echols, Windy Echols, Tim McDow, Donna McDow, Chuck Mitchell, Pam Mitchell, Kevin Solid, Bonnie Solid John White, Cynthia White, Patrick J. Mahoney.

Jan W. Baran, Wiley Rein & Fielding, LLP, Washington, DC, for Chamber of Commerce of U.S., National Ass'n of Manufacturers, U.S. Chamber Political Action Committee, Nat. Ass'n of Wholesaler-Distributors, California Democratic Party, Shawn Steel, Timothy J, Morgan, Barbara Alby, Santa Cruz County Republican Central Committee, Douglas R. Boyd, Sr.

Donald John Mulvihill, Cahill, Gordon & Reindel, Washington, DC, for National Ass'n of Broadcasters.

Laurence Edward Gold, American Federation of Labor, Washington, DC, for American Federation of Labor and Congress of Industrial Organizations, AFL-CIO Committee on Political Educ. Political Contributions Committee.

William J. Olson, William J. Olson, P.C., McLean, VA, Herbert W. Titus, pro hac vice, Troy A. Titus, P.C., Virginia Beach, VA, for Ron Paul, Gun Owners of America, Inc., Gun Owners of America Political Victory Fund, Realcampaignreform.org, Citizens United, Citizens United Political Victory Fund, Michael Cloud, Carla Howell.

Bobby Roy Burchfield, Thomas Overton Barnett, Covington & Burling, Washington, DC, for Republican Nat. Committee, Mike Duncan, Republican Party of Colorado, Republican Party of Ohio, Republican Party of New Mexico, Dallas County (Iowa) Republican County Central Committee.

Jan W. Baran, Wiley Rein & Fielding, LLP, Washington, DC, Deborah B. Caplan, pro hac vice, Lance Herman Olson, pro hac vice, Olson, Hagel, Waters & Fishburn, Sacramento, CA, for Art Torres, Yolo County Democratic Central Committee, California Republican Party.

David A. Wilson, Hale & Dorr, Washington, DC, Brenda Wright, pro hac vice, John C. Bonifaz, pro hac vice, Bonita Tenneriello, pro hac vice, Lisa J. Danetz, pro hac vice, National Voting Rights Institute, Boston, MA, for Victoria Jackson Gray Adams, Carrie Bolton, Cynthia Brown, Derek Cressman, Victoria Fitzgerald, Anurada Joshi, Peter Kostmayer, Nancy Russell, Kate Seely-Kirk, Rose Taylor, Stephanie L. Wilson, California Public Interest Research Group, Massachusetts Public Interest Research Group, New Jersey Public Interest Research Group, U.S. Public Interest Research Group, Fannie Lou Hamer Project, Association of Community Organizers for Reform Now.

Sherri Lynn Wyatt, Washington, DC, Cherlyn F. Freeman-Watkins, Washington, DC, for Bennie G. Thompson, Earl F. Hilliard.

Lawrence H. Norton, Richard B. Bader, Stephen Hershkowitz, David Kolker, Act-

ing Asst. Gen. Counsel, Robert W. Bonham III, Vivien Clair, Holly J. Baker, Colleen T. Sealander, Harry Summers, Benjamin A. Streeter III, Greg Mueller, William Shackelford, Kevin Deeley, Leigh G. Hildebrand, Brant Levine, Michelle Abellera, Mark Goodin, Federal Election Commission, Washington, DC, for Defendant Federal Election Commission.

Roger M. Witten, Seth P. Waxman, Randolph D. Moss, Lynn Bregman, Eric J. Mogilnicki, Edward C. DuMont, Michael D. Leffel, Anja L. Manuel, Stacy E. Beck, A. Krisan Patterson, Jennifer L. Mueller, Wilmer, Cutler & Pickering, Washington, DC, Bradley S. Phillips, Michael R. Doyen, Stuart N. Senator, Deborah N. Pearlstein, Randall G. Sommer, Shont E. Miller, Munger, Tolles & Olson, LLP, Los Angeles, CA, David J. Harth, Charles G. Curtis, Jr., Monica P. Medina, Michelle M. Umberger, Sarah E. Reindl, Heller Ehrman White & McAuliffe LLP, Madison, WI, Frederick A.O. Schwarz, Jr., E. Joshua Rosenkranz, Prof. Burt Neuborne, Elizabeth Daniel, Laleh Ispahani, Adam H. Morse, Brennan Center for Justice, New York, NY, Fred Wetheimer, Alexandra Edsall, Democracy 21, Washington, DC, for Defendant-Intervenors: Senators John McCain, Russell Feingold, Olympia Snowe, James Jeffords, Representatives Christopher Shays, Martin Meehan, James Jeffrods.

Theodore C. Hirt, Douglas N. Letter, James J. Gilligan, Terry M. Henry, Rupa Bhattacharyya, Michael S. Raab, Dana J. Martin, Andrea Gacki, Marc Kesselman, Serrin Turner, Irene M. Solet, Colette G. Matzzie, Ara B. Gershengorn, John Knepper, Robert D. McCallum, Jr., Shannen Coffin, Joseph H. Hunt, U.S. Dept. of Justice, Civ. Div., Washington, DC, for U.S., John Ashcroft, U.S. Dept. of Justice, Federal Communications Comm'n.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Pending before this Court are matters of confidentiality remanded to it by the Three–Judge District Court,[1] *McConnell v. FEC*, No. 02–582 (D.D.C. Jan. 16, 2003) (order remanding to a single-judge district court matters of confidentiality and the proposed Press Intervenors' motion to make public the full record), relating to the consolidated action challenging as unconstitutional the Bipartisan Campaign Reform Act of 2002, Pub.L. No. 107–155, 116 Stat. 81 (2002) ("BCRA"). After considering both party and non-party objections, the Three–Judge District Court's Agreed Protective Order, *McConnell v. FEC*, 02–582 (D.D.C. Aug. 13, 2002) (order to permit the parties to file certain designated documents as "Confidential" or "Counsel Only"), the Three–Judge District Court's oral order regarding the unsealing of protected documents, *see* Tr. at 387–96 (*McConnell v. FEC*, 02–582 (D.D.C. Dec. 5, 2002) [hereinafter "Oral Order"] (oral order to consider unsealing documents filed pursuant to the Agreed Protective Order)), and the applicable law, the Court shall unseal and make public the opinions of the Three–Judge District Court and the vast amount of information contained therein supporting the Court's conclusions. However, the Court will not unseal any part of the record originally filed under seal that is not contained in the opinions.

The Order accompanying this memorandum opinion will articulate the specific obligations of the parties. Essentially, the opinions of the Three–Judge District Court will be disclosed in their entirety, save for several narrow exceptions.[2] In

---

1. The Three–Judge District Court was originally convened pursuant to the statutory grants of authority found in Section 403(a)(1) of the Bipartisan Campaign Reform Act of 2002, Pub.L. No. 107–155, 116 Stat. 81 (2002) ("BCRA") and 28 U.S.C. § 2284. *See NRA v. FEC*, No. 02–581 (D.D.C. Mar. 28, 2002) (order granting NRA Plaintiffs' application for a three-judge district court).

2. In certain instances, this Court has determined that the rights of non-parties to this proceeding prohibit the disclosure of the source of certain limited information cited or quoted in my Findings of Fact and in Judge Leon's Findings of Fact. The quotations from

addition, the evidence cited or quoted by the Three–Judge District Court in its opinions shall be disclosed to the public. This evidence is highly probative to and supportive of the opinions of the Three–Judge District Court. Accordingly, this material will be disclosed either as it appears quoted in the Court's opinions or, where the Court relies on a document to support a proposition, but does not quote directly from that document, from the probative portion of the document itself. Thus, only the portion of the cited document relied upon by the Three–Judge District Court need be disclosed, and only to the extent indicated in the Court's opinions.[3] In addition, the parties shall unseal those sealed portions of their briefs where the Court has already ordered disclosure consistent with this Memorandum Opinion and the accompanying Order. As a result, the parties will only be required to re-file with the Court on the public record material relied upon by the Three–Judge District Court in its opinions.[4]

This Court has determined that in certain narrow instances, non-parties to this proceeding are entitled to remain confidential under *United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980). Accordingly, certain citations in my Findings of Facts, *see* Findings ¶¶ 1.71.3, 1.74.3, 1.78.1, and in Judge Leon's Findings of Fact, *see* Findings ¶¶ 34, 238, 240, have been redacted and the non-parties have been characterized in such a way as to protect their privacy interests. One additional document in my Findings of Fact is cited, but is to remain under seal. *See* Kollar–Kotelly's Opinion at Findings ¶ 2.6.5.1. In addition, Judge Henderson cites to portions of Defendants' Amended Proposed Findings of Fact, Defs.' Amended Proposed Findings at 20–134, 153, 192, 214–224 and 238, and Defendant Intervenors Proposed Findings of Fact, Def. Intervenors' Proposed Findings at 6–12, 37–38, in her Findings of Fact. Although the parties will be required to disclose these cited pages, the following paragraphs shall be redacted to protect the interests of non-parties under *Hubbard* : Defendants' Amended Proposed Findings of Fact at ¶¶ 95; 100; 123, lines 5, 6, and line 7 through the identification of the sealed document; 142; 164; 676 and Defendant Intervenors' Proposed Findings of Fact at ¶ 27, line 11, beginning with the identification of the document, and continuing until the end of the finding. Judge Henderson, in her opinion, has indi-

---

documents and testimony provided by these non-parties appear in full, but the source of this information has been characterized in such a way as to protect the entities' identities, and the bates numbers have been redacted in a similar effort, to protect the confidentiality rights of these non-parties. These non-parties will remain anonymous, protecting their privacy interests, but, at the same time, the public will be permitted to evaluate the information they have provided to the Court. This course strikes an appropriate balance between two opposing interests.

In addition, Judge Henderson's opinion cites to Government Defendants' Amended Proposed Findings of Fact and Defendant Intervenors' Proposed Findings of Fact. These documents will be disclosed, but in certain limited situations, portions of the findings of facts have been redacted because they impli-

cate the same type of privacy rights discussed in this footnote.

3. In other words, where the citation indicates a range of page numbers, the information within that range of pages must be disclosed; however, where the citation indicates particular paragraph or line numbers, only the information cited within those paragraph or line numbers need be disclosed by the parties. Where the Court quotes evidence directly, the supporting document need not be disclosed at all, as the pertinent information is already available to the public in the form of a quotation.

4. The parties also filed several exhibits under seal that contain both sealed and unsealed material. *See, e.g.,* DEV 130 (containing both confidential and non-confidential material). The parties must segregate those portions that were not filed under seal and refile them with the Court as part of the public record.

cated in footnotes the material that is sealed with a reference to this Memorandum Opinion. Therefore, to determine the exact portions of the record that are sealed and cited by Judge Henderson in her opinion, this Memorandum Opinion shall govern.

## I. BACKGROUND

On March 27, 2002, President George W. Bush signed BCRA into law, the first major overhaul of the Federal Election Campaign Act ("FECA") since the 1974 Amendments and their revision following *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). That very same day, NRA Plaintiffs[5] filed suit in this Court, challenging BCRA as unconstitutional. *See generally* NRA Pls.' Compl. (*NRA v. FEC*, 02–581 (D.D.C. Mar. 27, 2002)). On the following day, this Court issued an order pursuant to the statutory grants of authority in Section 403(a)(1) of BCRA and 28 U.S.C. § 2284 granting NRA Plaintiffs' application for a three-judge district court. *See NRA v. FEC*, No. 02–581 (D.D.C. Mar. 28, 2002) (order). Between March 27, 2002, and May 27, 2002, ten other cases were filed with the Court. All of these cases, including *NRA v. FEC*, No. 02–581 (D.D.C.), were consolidated with *McConnell v. FEC*, No. 02–582 (D.D.C.2002), and assigned to the same Three–Judge District Court Panel.

In an effort to "expedite to the greatest possible extent the disposition" of this consolidated action, 2 U.S.C. § 437h(a)(4) (note); BCRA § 403(a)(4), on August 13, 2002, the Three–Judge District Court signed an Agreed to Protective Order. *McConnell v. FEC*, 02–582 (D.D.C. Aug. 13, 2002) [hereinafter "Agreed Protective Order"] (order). The Order permitted the parties to exchange documents during dis-

covery and file certain designated documents with the Court as "Confidential" or "Counsel Only," Agreed Protective Order ¶¶ 2–7, thereby avoiding prolonged wrangling over discovery requests. The Three–Judge District Court, however, retained discretion to review and modify the Agreed Protective Order. *Id.* ¶ 11 ("All Confidential Information that is filed with the Court ... shall be filed under seal and kept under seal *until further order of the Court*.") (emphasis added); *id.* ¶ 12 ("This Order shall not preclude any party from seeking a ruling from the Court regarding the validity or propriety of any claim of confidentiality asserted by the producing entity."); *id.* ¶ 13 ("Nothing in this Order shall prevent or in any way limit or impair the right of counsel for the parties to file a motion to unseal portions of the record for purposes of this litigation."); *id.* ¶ 25 ("Notwithstanding anything to the contrary that may be set forth herein, the parties understand that the Court shall retain the authority to modify this Order upon good cause shown.").

On December 5, 2002, the Three–Judge District Court orally notified the parties at the oral argument of its intention to unseal the entire record, *see* Tr. at 387–96, unless specific written objections were filed with the Court delineating the "legal basis" in support of keeping designated portions of the record sealed. *Id.* at 396 (Kollar–Kotelly, J.). Such objections were expected to be consistent with the "stringent" presumption of disclosure. *Id.* at 396 (Kollar–Kotelly, J.). Counsel for the litigants were directed to notify third parties of the Three–Judge District Court's intention to unseal the record as the parties would be better able to identify them than the Court; particularly given the vo-

---

**5.** The NRA Plaintiffs include the National Rifle Association and the National Rifle Associa-

tion Political Victory Fund.

luminous record confronting the Court and the expedited nature of the proceedings. *See id.* at 387–96. Following the Oral Order, on January 16, 2003, the Three–Judge District Court issued an order remanding all matters of confidentiality to this Court. *McConnell v. FEC,* No. 02–582 (D.D.C. Jan. 16, 2003) (order remanding to a single-judge district court matters of confidentiality and the proposed Press Intervenors' motion to make public the full record). Accordingly, this Court is vested with the authority to rule on all objections to unseal the record filed with the Three–Judge District Court.

## II. LEGAL STANDARD

■ In *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a common law right to view court documents. *Nixon,* 435 U.S. at 597, 98 S.Ct. 1306 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). However, the right of access is far from absolute. *See id.* at 598, 98 S.Ct. 1306 (listing various exceptions to the general rule of openness). Moreover, *Nixon* observed that the decision as to access "is one best left to the sound discretion of the trial court." *Id.* at 599, 98 S.Ct. 1306. This discretion should be "exercised in light of the relevant facts and circumstances of the particular case." *Id.* Although much of the available case law on the subject of openness arises in the criminal context, the "presumption of openness" applies in the civil context as well. *See Johnson v. Greater Southeast Cmty. Hosp.,* 951 F.2d 1268, 1277 (D.C.Cir.1991). At least in the criminal context, this "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."

*Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

■ The D.C. Circuit gave form to the common law right to access in *United States v. Hubbard,* 650 F.2d 293 (D.C.Cir. 1980), which established a six-part balancing test. *See Hubbard,* 650 F.2d at 317–22. As restated in *Johnson v. Greater Southeast Community Hospital,* 951 F.2d 1268 (D.C.Cir.1991), these six factors include:

> (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced.

*Johnson,* 951 F.2d at 1277 (citing *Hubbard,* 650 F.2d at 317–22). *Hubbard* also recognized that "where both the public interest in access and the private interest in non-disclosure are strong, partial or redacted disclosure [may] satisfy both interests." *Hubbard,* 650 F.2d at 324–25. It is pursuant to this framework that the Court must analyze the various objections registered by each party. In doing so, the Court exercises the broad discretion it is provided under the law.

## III. DISCUSSION

Pursuant to the Three–Judge District Court's December 5, 2002, Oral Order, the parties and non-parties to the consolidated action were put on notice that all documents subject to the Agreed Protective Order would be unsealed, unless specific objections were raised. *See* Tr. at 387–96. As a preliminary matter, it should be noted that the level of specificity in the objec-

tions filed by both parties and non-parties in the eleven consolidated cases ranges widely.[6] Moreover, the sheer volume of the documents filed with the Court—some 100,000 pages by the Court's own conservative estimation—further complicates this matter. Faced with these challenges, the Court has decided that the most prudent course is to begin with (A) a careful examination of the Agreed Protective Order, followed by (B) a close analysis of the objections raised under 2 U.S.C. § 437g(a)(12)(A), and finally, (C) a review of the common law right of access to judicial proceedings. The Court will then consider (D) each party's objections to the common law right of access in turn, based on its status as (1) a party or (2) a nonparty to these proceedings.

## A. The Agreed Protective Order

As noted above, the Court retained considerable discretion to modify and unseal the record under the Agreed Protective Order. The Order, by its clear and plain terms, puts both parties and non-parties, alike, on notice: "Notwithstanding anything to the contrary that may be set forth herein, the parties understand that the Court shall retain the authority to modify this Order upon good cause shown." Agreed Protective Order ¶ 25.

Despite the patent terms of the Order, many of the parties contend that the Court should not compel the disclosure of docu-ments filed under seal. *See, e.g.,* Mot. of NRTWC to Maintain Docs. Under Seal at 4–5 (contending that NRTWC's reliance on the Agreed Protective Order precludes disclosure of certain documents). With regard to Plaintiffs, the Court finds this argument, by itself, without merit. Plaintiffs willfully challenged the constitutionality of BCRA and placed evidence before this Court to adjudicate their claims. Moreover, as litigants in this case, they should have been well-aware of the terms of the Agreed Protective Order. While the terms of the Agreed Protective Order, alone, do not compel the disclosure of sealed documents, its terms are certainly not a barrier to disclosure. At the same time, the binding law of this circuit, handed down, *inter alia*, in *Hubbard*, requires the Court to consider the nature of each document, mindful of "this country's strong tradition of access to judicial proceedings." *Hubbard,* 650 F.2d at 317 n. 89.

Indeed, in *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219 (6th Cir. 1996), the Court of Appeals for the Sixth Circuit admonished a district court for failing to review the nature of documents filed under an agreed protective order. *Procter & Gamble,* 78 F.3d at 222, 227. The Sixth Circuit observed that under the agreed protective order, "[t]he parties and not the court" were determining which documents

---

**6.** For example, the ACLU Plaintiffs did not file any objections with the Court; the Adams Plaintiffs filed a submission with the Court waiving their objections, *see* Adams Pls.' Supp. Submission Regarding the Status of Docs. Filed Under Seal at 1; the NRA Plaintiffs only objected to the disclosure of personal information, like bank account and credit card numbers, *see* NRA Pls.' Objections to Lifting Confidentiality Designations with Respect to Sensitive Financial Information at 1–2; and the RNC Plaintiffs carefully inventoried each document that they requested to remain under seal along with the general legal arguments supporting each claim, *see generally* RNC Pls.' Objections to the Unsealing of Certain Docs. On the other hand, Government Defendants "oppose[d] the wholesale unsealing of the record." Mot. of DOJ and FEC to Maintain Certain Portions of the Record Under Seal at 1. Moreover, several Plaintiffs requested that the vast majority of the documents they filed with the Court remain under seal. *See* Mot. of NRTWC to Maintain Docs. Under Seal at 1; Objections to Unsealing Confidential Docs. by Pls. NRLC and CFG at 2–3.

would remain under seal, *id.*, contrary to the "long-established legal tradition which values public access to court proceedings," *id.* at 227 (internal quotation marks omitted). Consequently, the Sixth Circuit vacated the protective order, explaining that a "District Court cannot abdicate its responsibility to oversee the discovery process and determine whether filings should be made available to the public." *Id.*

This Court is left to conclude that Plaintiffs' claims of reliance on the Agreed Protective Order are without merit. Under their logic, each litigant would be free to decide for the Court what information is or is not confidential. Such a conclusion would defy the principles laid down in *Nixon v. Warner* and is contrary to the Court's prerogative explicitly stated in the Agreed Protective Order.

On the other hand, the Court is sensitive to the unique concerns of non-parties to this litigation. Although the terms of the Agreed Protective Order are no less plain when read by a non-party, these individuals or entities were brought into this proceeding by the parties to provide evidence—acquired, it appears, based on assurances of confidentiality—and clearly have a greater privacy interest than those here by their own volition. The status of non-parties, alone, does not shield their objections from review by the Court under the principles laid down in *Hubbard;* however, the Court is cognizant of their unique interests and rights.

**B. 2 U.S.C. § 437g(a)(12)(A) Objections**

Various parties—namely the AFL–CIO Plaintiffs,[7] Chamber of Commerce Plaintiffs,[8] several McConnell Plaintiffs,[9] and the FEC Defendant—object to the disclosure of certain documents, purported to fall under the auspices of 2 U.S.C. § 437g(a)(12)(A). Joint Statement Regarding Confidentiality of 2 U.S.C. § 437g(a)(12)(A) Materials by Pls. AFL–CIO, Chamber of Commerce and Other Pls. and Def. FEC at 4 [hereinafter "Joint Statement"]. According to these parties, certain contested documents "constitute part of the non-public administrative record in a closed FEC enforcement proceeding, Matters Under Review ('MURs') 4291, *et. al.*, and are subject to the decision in *AFL–CIO v. FEC,* 177 F.Supp.2d 48 (D.D.C.2001)." *Id.* at 1. In *AFL–CIO v. FEC,* Judge Gladys Kessler held that the disclosure of investigative files at the conclusion of an administrative enforcement proceeding was "arbitrary, capricious, and contrary to law." *AFL–CIO,* 177 F.Supp.2d at 59–62. As a result, the FEC was prohibited from disclosing information directly from its investigative files to the public. Therefore, Plaintiffs argue that this Court is precluded from releasing the contents of the same investigative files in this proceeding.[10]

The plain language of Section 437g(a)(12)(A) prohibits the FEC from disclosing information from its investigative

7. The AFL–CIO Plaintiffs include the American Federation of Labor and the Congress of Industrial Organizations and the AFL–CIO Committee on Political Education Political Contributions Committee.

8. The Chamber of Commerce Plaintiffs include: the Chamber of Commerce of the United States, the U.S. Chamber Political Action Committee, the National Association of Manufacturers, and the National Association of Wholesaler–Distributors.

9. The McConnell Plaintiffs that joined in filing the Joint Statement include: Associated Builders and Contractors and Associated Builder and Contractors Political Action Committee.

10. In order for Plaintiffs and Defendant to prevail on this argument, they must demonstrate that the disclosure of documents in this case would violate Section 437g(a)(12)(A).

files, developed during an administrative enforcement proceeding. Specifically, the statute states:

> Any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.

2 U.S.C. § 437g(a)(12)(A). Section 437g(a)(12)(A) is implemented by 11 C.F.R. § 111.21(a), which provides that:

> Except as provided in 11 CFR 111.20, no complaint filed with the Commission, nor any notification sent by the Commission, nor any investigation conducted by the Commission, nor any findings made by the Commission shall be made public by the Commission or by any person or entity without the written consent of the respondent with respect to whom the complaint was filed, the notification sent, the investigation conducted, or the finding made.

11 C.F.R. § 111.21(a). In *In re Sealed Case*, the D.C. Circuit held that "both 2 U.S.C. § 437g(a)(12)(A) and 11 C.F.R. § 111.21(a) plainly prohibit the FEC from disclosing information concerning ongoing investigations under any circumstances without the written consent of the subject of the investigation." *In re Sealed Case*, 237 F.3d 657, 666–67 (D.C.Cir.2001). Moreover, in *AFL–CIO*, Judge Kessler determined that Section 437g(a)(12)(A)'s protections do not lapse once an investigation ends. *AFL–CIO*, 177 F.Supp.2d at 56. According to Judge Kessler's opinion, the privacy interest of an innocent accused actually strengthens the need for confidentiality. *Id.*

■ The facts of this proceeding, however, are readily distinguishable from both *In re Sealed Case* and *AFL–CIO*. Plaintiffs' purported Section 437g(a)(12)(A) documents can be divided into two categories:

(1) documents filed with the Court by AFL–CIO Plaintiffs, Joint Statement at 3, and (2) documents filed with the Court by Chamber of Commerce, National Association of Manufacturers, and Associated Builders and Contractors Plaintiffs (collectively, "Coalition Plaintiffs"), *id.* at 4–5. Both sets of documents filed with the Court were also filed with the FEC during an administrative enforcement action. With regard to the first category of documents, "the AFL–CIO agreed to identify documents in the record of MURs 4291, *et al.,* ... that were responsive to defendants' discovery requests ... and provide them to the defendants under ... the Agreed Protective Order." *Id.* at 3. In the Joint Statement, AFL–CIO Plaintiffs state that these documents were produced from AFL–CIO files and "recopied and provided to the FEC" for this litigation. *Id.* at 3–4. The second set of documents, involving Coalition Plaintiffs, were produced in a slightly different fashion. Rather than recopy documents from their own files, Coalition Plaintiffs "stipulated to a procedure that allowed counsel for defendants to review and use documents in the FEC's files" for this litigation. *Id.* at 5. According to the discovery stipulation, Coalition Plaintiffs "agree[d] to make [documents in the FEC's files] available to the Commission for use in [this] litigation *as if they had been produced by the Client* [Coalition Plaintiffs] *in response to [discovery] Requests.*" Praecipe Filing Discovery Stipulation at 2 [hereinafter "Discovery Stipulation"] (emphasis added). Under the process agreed to by the parties, FEC Defendant first produced the documents from its investigative files, then these documents were delivered to Coalition Plaintiffs for review, and finally, the documents were copied for use in this litigation and tendered to the FEC in response to its discovery requests. *See id.* at 2–3.

As alluded to above, in both *In re Sealed Case* and *AFL–CIO*, the FEC attempted to disclose information contained in FEC files that it had gathered as part of an administrative enforcement action under FECA. *See In re Sealed Case*, 237 F.3d at 662–63; *AFL–CIO*, 177 F.Supp.2d at 52–55. Both courts concluded that the FEC was prohibited from disclosing this information from the FEC files to the public. *In re Sealed Case*, 237 F.3d at 666–67; *AFL–CIO*, 177 F.Supp.2d at 56. Here, however, the FEC received documents deemed pertinent to its discovery requests for use in this litigation.

As noted above, the documents provided by AFL–CIO Plaintiffs had already been tendered to the FEC during an investigative proceeding. In the course of this litigation, however, AFL–CIO Plaintiffs reproduced these documents from their own files and turned them over to FEC Defendant anew, in response to discovery requests. As a result, the documents produced for this proceeding did not come directly from an FEC investigative file, but rather from AFL–CIO Plaintiffs' files. As for the second set of documents, while these documents originally came from a FEC investigative file, they were returned to Coalition Plaintiffs—consistent with the statute—where they were reviewed, copied, and returned to FEC Defendant "as if they had been produced by the [Coalition Plaintiffs] in response to [discovery] Requests." Discovery Stipulation at 2. By reviewing and returning the documents as if disclosing documents from their own files, Coalition Plaintiffs' Section 437g(a)(12)(A) claims were vitiated.

Coalition Plaintiffs were, of course, entitled to review the portions of the FEC's files that they originally supplied as the result of an administrative enforcement proceeding. By reviewing and copying those documents, however, and then returning them to FEC Defendant in response to a discovery request in this litigation, the documents no longer fall under the protections afforded by Section 437g(a)(12)(A). Defendant FEC did not seek the returned-documents as the result of a FECA enforcement proceeding, rather these documents were requested during discovery in a civil trial initiated by Coalition Plaintiffs.

In fact, the FEC was explicitly prohibited from opening its investigative files in response to discovery requests by parties not related to the particular information requested. *See McConnell v. FEC*, No. 02–582 at 4–5 (D.D.C. Aug. 12, 2002) [hereinafter "August 13, 2002, Order"] (order denying the FEC a protective order that would allow it to disclose to certain parties the entire investigative files of approximately 61 pending or closed FEC administrative enforcement proceedings). The Three–Judge District Court recognized the "sensitive nature of the documents" and observed that "less intrusive alternatives to disclosing the files" existed rather than permitting the diverse interests to this case to "rummage" through these files. *Id.* at 10. In a footnote, the Three–Judge District Court noted that the Plaintiffs, in fact, had suggested one such alternative:

> Insofar as any plaintiff happens to be an investigated party in one of the FEC's ongoing or closed investigations, that plaintiff and the Commission have equal access to the documents provided in the investigation by that party, and either can seek to reach an accommodation with the other about the use of any such document here. Or, the FEC can, through discovery requests or third party subpoenas—appropriately tailored under Rule 26 or Rule 45 to the issues in the case at bar—obtain the documents anew, with the parties so targeted for discovery cognizant of the effort and able to protect their legal interests.

*Id.* at 10 n. 5 (quoting Pls.' Opp'n at 5). As a result of the August 13, 2002, Order, the FEC could not produce information it had acquired from an ongoing or closed enforcement proceeding directly from its files in violation of Section 437g(a)(12)(A). Although the documents at issue here were part of an FEC investigative file, the FEC was not precluded from requesting the same documents directly from the parties or devising an agreement, consistent with Section 437g(a)(12)(A), whereby the information in the files could be used in this proceeding as if produced by the party. *See id.* Indeed, the August 13, 2002, Order made it clear that the FEC could not introduce documents in such a way that would implicate Section 437g(a)(12)(A). Consequently, by denying Defendant FEC's request for a special, Section 437g(a)(12)(A) protective order *in toto* and prohibiting the parties from implicating Section 437g(a)(12)(A), the Three–Judge District Court essentially limited the confidentiality of all the documents produced in this litigation to the same disclosure protections afforded by the general Agreed Protective Order.

The fact that Coalition Plaintiffs stipulated that the disclosure of this information did not constitute a "waiver of any protection afforded under § 437g of FECA" is inapposite. Discovery Stipulation at 3. As the Court has demonstrated, the documents proffered by Coalition Plaintiffs and returned to the FEC are entitled to no protection under Section 437g(a)(12)(A). The waiver provision means that by tendering these documents to the FEC as the result of a discovery request, Coalition Plaintiffs' actions did not constitute a waiver of their statutory protections afforded under Section 437g(a)(12)(A) for release in other contexts. Accordingly, the FEC is still precluded from releasing these and other documents directly from its investigative files or using these documents, tendered during discovery, for purposes other than this litigation.

Under the logic expounded in the Joint Statement, the protections accorded by Section 437g(a)(12)(A) would extend beyond the clear language of the statute. According to the parties, once a document became part of an FEC investigative file, the original document, still in the possession of the party being investigated, would be forever shielded from disclosure, even where that document was responsive to a discovery request and obtained anew in a separate judicial proceeding.[11] This argument is unpersuasive. Section

---

**11.** Judge Kessler rejected this line of reasoning in *AFL–CIO.* In that case, the defendant FEC argued "that if § 437g(a)(12)(A) remains in effect after an investigation ends, any district court action pertaining thereto would have to remain sealed, leading to a body of secret case law." *AFL–CIO,* 177 F.Supp.2d at 63. In dismissing this argument, but holding that Section 437g(a)(12)(A) precludes the FEC from disclosing its investigative files *sua sponte,* Judge Kessler noted the example of a Section 437g(a)(6) lawsuit:

> With respect to the FEC's enforcement proceedings under § 437g(a)(6), the district court does not review the investigative file or the certified administrative record; in fact, there is no requirement that the administrative record even be filed with the district court. A § 437g(a)(6) lawsuit is a separate and independent proceeding that

seeks to establish that a former respondent in an FEC administrative proceeding has violated FECA. It involves no review of either the underlying FEC investigation or the FEC's administrative enforcement decision, but instead requires fresh discovery and a determination of the facts de novo. *Therefore, § 437g(a)(12)(A) has no effect on the ability of the FEC to prosecute these cases and no bearing on whether any decision would have to be sealed.*

*Id.* (emphasis added). Although a Section 437g(a)(6) lawsuit would likely involve many of the same documents contained within the FEC's investigative files, Judge Kessler rejects the notion that Section 437g(a)(12)(A) eternally shields these documents from disclosure where they are obtained anew and used in a separate judicial proceeding.

437g(a)(12)(A) clearly prohibits the Commission or any person from disclosing "[a]ny notification or investigation made under [Section 437] ... without the written consent of the person receiving such notification or the person with respect to whom such investigation is made." § 437g(a)(12)(A). It does not, however, permanently transform the nature of an individual or entity's documents kept in its files merely because those documents also happen to be included in a FEC investigative file. Such documents—for example, political or organizational documents—do not necessarily reveal information about the nature of the FEC enforcement action, such as the complaints that launched the investigation or the Commission's internal deliberations, and unlike documents subpoenaed in an enforcement action, such documents are not being used by the FEC to prosecute an individual or entity under FECA.[12]

The Plaintiffs in this action chose to litigate with the understanding that they could be required to produce documents in response to discovery requests, and that such documents could potentially become a part of the judicial record, where there is a "strong tradition of [public] access." *Hubbard,* 650 F.2d at 317 n. 89. The documents at issue here may be protected under *Hubbard,* but they are not subject Section 437g(a)(12)(A). The statute has not been implicated because these documents were deemed to have been produced by the parties directly for this litigation and not by the FEC from its investigative files.[13]

## C. The Common Law Right of Access to Judicial Proceedings

■ Many of the parties and non-parties to this litigation object to the disclosure of certain documents filed with the Court under seal. While this country has a "strong tradition of access to judicial proceedings," *id.,* the right of access is far from absolute, *Nixon,* 435 U.S. at 598, 98 S.Ct. 1306. Indeed, the D.C. Circuit has stated: "not all documents filed with

**12.** When the FEC initiates an administrative enforcement proceeding, the individual or entity that is being investigated has no say in the matter. No doubt, most, if not all, parties investigated by the FEC have been forced to produce documents against their will. Section 437g(a)(12)(A) precludes the FEC from releasing these documents to the public or using them for any other purpose, without the express consent of the party that provided them. However, when an individual or entity, which also happens to have been investigated by the FEC, initiates a lawsuit, that party has made the voluntary decision to file a suit in a court of law. Any documents that the party must produce during the course of that litigation stem directly from the volitional act of filing a lawsuit, provided that the documents were introduced as the result of discovery and not obtained in violation of Section 437g(a)(12)(A).

**13.** As noted above, some of the documents produced in this action were also implicated in *AFL–CIO v. FEC,* 177 F.Supp.2d 48 (D.D.C. 2001). That case is currently on appeal to the Court of Appeals for the District of Columbia Circuit, Case No. 02–5069 (D.C.Cir.). Only six of the documents at issue in *AFL–CIO* were actually quoted or cited by the Three-Judge District Court in this proceeding, and only the quoted or cited portions are being made available to the public by this Court. As a result, this Court's decision to unseal documents in this litigation will not affect the status of the vast number of documents subject to the D.C. Circuit's decision in *AFL–CIO.* Moreover, three of the six documents recount or describe advertisements that AFL–CIO Plaintiffs broadcasted on the public airwaves during the 1996 election cycle, and therefore, do not involve politically sensitive materials. Of the remaining three documents, one contains information about a survey conducted in 1996, the second concerns "issue" advocacy and recommends various political consultants (only the quoted portion of this document is being disclosed), and the third suggests that the AFL–CIO should run "issue" advocacy in a particularly close election race. *See infra* Discussion at ——.

courts fall within [the common law right of access's] purview—at least, not in this circuit." *United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C.Cir.1997). "[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *Id.* at 163; *accord EEOC v. National Children's Center*, 98 F.3d 1406, 1409 (D.C.Cir.1996) ("A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions.").

The Court is therefore vested with considerable discretion, *see, e.g., Nixon*, 435 U.S. at 599, 98 S.Ct. 1306, but must exercise that discretion within the confines of this circuit's law. Therefore, "in light of the relevant facts and circumstances" of this case, *Hubbard*, 650 F.2d at 317, more fully explained below, the Court is convinced that because "both the public interest in access and the private interest in non-disclosure are strong," partial disclosure is the best means to satisfy both the public and the parties' interests, *id.* at 324-25. Consequently, this Court will make the Three–Judge District Court's opinions available to the public.[14] The sheer number of documents filed with the court, and their sensitive nature, preclude a blanket disclosure order. It is the opinion of the Court, however, that the quoted and cited material, which by their nature are both narrowly tailored to protect the confidentiality interests of the parties and non-parties and are probative to the outcome of this adjudication, will permit the public to follow the arguments, issues, and outcome of this litigation. The Court must now exercise its discretion and proceed to analyze each party and non-party's objections, categorized and carefully considered under *Hubbard.*

## D. Application of the *Hubbard* Test

### (1) Party Objections or Waivers

*Hubbard* requires the Court to consider the identity of each party that raises an objection. *Hubbard*, 650 F.2d at 319. As a result, the Court has divided its inquiry into two broad categories: (1) objections raised by parties and (2) objections raised by non-parties to these proceedings. It should be noted from the outset, however, that litigants to this proceeding have a lesser claim to privacy than third parties; that is, Plaintiffs affirmatively presented evidence to the Three–Judge District Court in order to obtain an adjudication on the merits of their claims.

### (a) McConnell Plaintiffs [15]

Of the twenty-one individuals and organizations that comprise the McConnell

---

**14.** The Three–Judge District Court quotes extensively from the record in its various findings of facts and opinions. As a result, where the Three–Judge District Court quotes directly from the record, that portion of the record will be available to the public as it appears in the opinion, in the form of a quotation. However, where the Three–Judge District Court cites to the record to support a proposition, but does not quote the record directly, a physical copy of the cited portion of the record will be made available to the public. It should also be noted, however, that in several instances, where this Court deemed a third party's interests particularly compelling, the source of that information has been redacted from the opinion to protect the confidentiality of the non-party. If not cited in the opinions, and if not sealed in the opinions or the Order accompanying this Memorandum Opinion, then the rest of the record originally filed under seal remains sealed.

**15.** The McConnell Plaintiffs include: Senator Mitch McConnell, Representative Bob Barr, Representative Mike Pence, Alabama Attorney General William H. Pryor, the Libertarian National Committee, Inc., the American Civil Liberties Union, Associated Builders and Contractors, Inc., Associated Builders and Contractors Political Action Committee, the Center for Individual Freedom, Club for Growth, Inc., Indiana Family Institute, Inc., the National Right to Life Committee, Inc., National Right to Life Educational Trust Fund, Nation-

Plaintiffs, only seven have filed objections to the Three–Judge District Court's Oral Order: the Associated Builders and Contractors ("ABC"), Joint Statement at 1, the ABC Political Action Committee ("ABC PAC"), *id.*, the National Right to Work Committee ("NRTWC"), Mot. of NRTWC to Maintain Docs. Under Seal at 1, the National Right to Life Committee ("NRLC"), Objections to Unsealing Confidential Docs. by Pls. NRLC and CFG at 1, the National Right to Life Education Trust Fund ("NRL Education Trust Fund"), *id.*, the Nation Right to Life Political Action Committee ("NRL–PAC"), *id.*, and the Club for Growth ("CFG"), *id.* As a result, the remaining McConnell Plaintiffs have waived any objections to this Court's order to unseal portions of the record.

The objections filed by these seven McConnell Plaintiffs can be divided into two categories: (1) Section 437g(a)(12)(A) and (2) general *Hubbard* objections. The Court has already indicated, however, that it finds Plaintiffs ABC and ABC PAC's Section 437g(a)(12)(A) arguments unpersuasive. *See supra* Discussion at 927–30. As a result, the Court will consider ABC and ABC PAC's Section 437g(a)(12)(A) objections under *Hubbard*.[16]

NRLC, NRL Education Trust Fund, NRL–PAC and CFG Plaintiffs (collectively, "NRLC and CFG Plaintiffs") object to the disclosure of all but eight documents filed with the Court. *See* Objections to Unsealing Confidential Docs. by Pls.' NRLC and CFG at 2–3. In addition, NRLC and CFG Plaintiffs continue to object to the disclosure of the confidential portions of NRLC Executive Director Dr. David O'Steen and CFG Executive Di-

rector David Keating's depositions. *See id.* at 2.

The Three–Judge District Court does not cite to any documents contested by NRLC Plaintiffs. The only contested material relied upon by the Three–Judge District Court in its opinions consists of a portion of Keating's deposition, *see* Keating Dep. at 59 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.6.3; Leon's Op. at Findings ¶ 308), which appears in the form of a quotation in Judge Kollar–Kotelly's Findings of Fact, and a citation to minutes of The Club for Growth's Board Meeting (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.5.1). The contested portion of the deposition clearly does not satisfy the stringent test under *Hubbard*. The quoted portion of Keating's deposition does not allude to sensitive political information or disclose any political "trade secrets," and this material has been deemed probative to the disposition of the Three–Judge District Court's adjudication. Accordingly, this Court will order the disclosure of this quotation as it appears in my Findings of Fact. As for the minutes of the Board Meeting, since I do not quote from this document and only provide a citation to the document in the record, I will keep the document under seal. Applying *Hubbard*, I conclude that since the Board's minutes are not widely disseminated and since CFG expressed a strong privacy interest in the document, the minutes shall remain under seal. In this case, the private interests in keeping the Board's minutes confidential outweighs the clear, probative value of the information contained therein.

---

al Right to Life Political Action Committee, the National Right to Work Committee, 60 Plus Association, Inc., Southeastern Legal Foundation, Inc., U.S. d/b/a ProEnglish, Thomas McInerney, Barret Austin O'Brock and Trevor M. Southerland.

16. Because these contested documents were also objected to by Chamber of Commerce Plaintiffs, the Court will entertain ABC and ABC PAC's objections with Chamber of Commerce Plaintiffs. *See infra* Discussion at 933–34.

NRTWC Plaintiff seeks to maintain the confidentiality of all of the documents that it originally filed under seal. Mot. of NRTWC to Maintain Docs. Under Seal at 1. Of these documents, however, only one is quoted in my and Judge Leon's Findings of Fact: the document beginning at NRW–02812 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 1.85.5 (NRW 02812); Leon's Opinion at Findings ¶¶ 184, 303 (NRW 02812, 02814)). The confidentiality of this document, a fundraising letter mailed to a potential NRTWC contributor, cannot be maintained under the standards expounded in *Hubbard.* Although fundraising letters of this sort are not mailed to the general public, they are nonetheless solicitations for contributions. This document is not an internal memorandum, it does not contain "sensitive political information," and it does not proffer "trade secrets." As a result, the portion of this letter quoted in my Findings of Fact will be disclosed to the public.

### (b) NRA Plaintiffs [17]

NRA Plaintiffs only object to the disclosure of "sensitive financial information." Objections of the NRA and PVF to Lifting the Confidentiality Designations with Respect to Sensitive Financial Information at 1. As a result, NRA Plaintiffs have waived their objections to the disclosure of all documents filed with the Court, save the objected to financial information. *See id.*

Undoubtedly, litigation regarding the regulation of our campaign finance system will involve money. In many instances, the parties filed documents with the Court that contained sensitive third-party financial information, including bank account and credit card numbers. Because there

is no public interest in the release of such information, and given the real and substantial harm that would result from disclosure of this information, all parties, including NRA Plaintiffs, will be permitted to redact sensitive financial information, including, but not necessarily limited to, credit card and bank account numbers. This, of course, does not include, *inter alia,* budget figures, account balances, or contribution amounts cited or quoted by the Three–Judge District Court in their opinions. In such instances, the Three–Judge District Court has determined that this information, contained in its decision, is probative evidence.

### (c) Echols Plaintiffs [18]

Echols Plaintiffs did not file any objections to the Three–Judge District Court's Oral Order and have thereby waived any objection to this Court's order to unseal portions of the record.

### (d) Chamber of Commerce Plaintiffs [19]

Plaintiffs Chamber of Commerce ("COC") and National Association of Manufacturers ("NAM") joined in filing the Joint Statement, which voiced their objection to the disclosure of alleged Section 437g(a)(12)(A) materials. Joint Statement at 1. Chamber of Commerce Plaintiffs, however, did not file any independent objections with the Court. Consequently, aside from the objections raised in the Joint Statement, Chamber of Commerce Plaintiffs have waived any objection to the Court's order to unseal portions of the record. Of the remaining Section 437g(a)(12)(A) documents, which failed to implicate the protections afforded by that

---

**17.**  *See supra* note 5.

**18.**  The Echols Plaintiffs are Emily Echols, Hannah McDow, Isaac McDow, Jessica Mitchell, Daniel Solid and Zachary C. White.

**19.**  *See supra* note 8.

statute, *see supra* Discussion at 927–30, the Court will analyze the merits of their confidentiality claims under *Hubbard,* along with the claims asserted by ABC and ABC PAC, *see supra* note 16.

After a careful review of the documents contested by Plaintiffs COC, NAM, ABC, and ABC PAC (collectively, "Coalition Plaintiffs") and relied upon by the Three–Judge District Court, this Court is not persuaded that these materials should remain sealed in light of "this country's strong tradition of access to judicial proceedings," *Hubbard,* 650 F.2d at 317 n. 89, and the factors expounded in *Hubbard.* Broadly speaking, the alleged Section 437g(a)(12)(A) documents [20] do not involve any information that could be considered a "trade secret" or politically sensitive information. These documents include telephone survey results about the impact of "issue" advertising, the effectiveness of "issue" advertising in particular congressional districts during the 1996 election cycle, and an assessment by the Coalition of marginal congressional districts, used in an effort to target these advertisements. All of this information relates to Coalition Plaintiffs' activities during the 1996 elec-

tion cycle.[21] Moreover, as with all material subject to this disclosure order, the cited and quoted portions of these documents are highly probative to the Three–Judge District Court's decisions, and subsequently, the public need for this material is particularly high. Because my Findings of Fact only rely on small portions of these documents, the relative harm stemming from their disclosure is low. Accordingly, these documents will be disclosed to the public, consistent with the terms in the accompanying Order.

### (e) National Association of Broadcasters Plaintiff

The National Association of Broadcasters did not file any objections to the Three–Judge District Court's Oral Order and have thereby waived any objection to this Court's order to unseal portions of the record.

### (f) AFL–CIO Plaintiffs [22]

AFL–CIO Plaintiffs joined in filing the Joint Statement, which objects to the disclosure of alleged Section 437g(a)(12)(A) materials. Joint Statement at 1. In addition, AFL–CIO Plaintiffs filed independent

---

**20.** Specifically, the Three–Judge District Court only cites twelve such documents: (1) TC 00698 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2; Leon's Opinion at Findings ¶ 300), (2) AV 0024–40 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2; Leon's Opinion at Findings ¶ 300), (3) AV 0046–47 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2), (4) AV 0060–64 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2), (5) AV 0106–18 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2), (6) AV 0139–41 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2; Leon's Opinion at Findings ¶ 300), (7) TC 00513–37 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2; Leon's Opinion at Findings ¶ 300), (8) NAW 0002, 0005 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2; Leon's Opinion at Findings ¶ 300), (9) TC 00662–63 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2), (10)

NAM 0206–27 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2; Leon's Opinion at Findings ¶ 300), (11) TC 0610–13 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.2.2), and (12) TC 00802–04 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.7.5).

**21.** Although Judge Gasch observed that "it is terribly difficult to establish, on an principled basis, temporal boundaries governing the protection to be accorded information," *Tavoulareas v. Washington Post Co.,* 111 F.R.D. 653, 661 (D.D.C.1986) (quoting *Zenith Radio v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866, 891 (D.Pa.1981)), the information relied upon here recounts historical events from almost seven years ago and does not expose any unique political strategies in the process.

**22.** *See supra* note 7.

objections with the Court. Resp. of AFL–CIO and AFL–CIO COPE PCC Regarding the Status of Docs. Filed Under Seal at 2. Because the Court found AFL–CIO Plaintiffs' Section 437g(a)(12)(A) objections, on their own, unpersuasive, *see supra* Discussion at 927–30, the Court entertains both Plaintiffs' Section 437g(a)(12)(A) objections and their general objections in light of the standards expounded in *Hubbard.*

The Three–Judge District Court did not cite or quote from any of the non-Section 437g(a)(12)(A) material to which AFL–CIO Plaintiffs object. Since this Court will only order the disclosure of material relied on by the Three–Judge District Court, this Court will not order the disclosure of any of this contested, non-Section 437g(a)(12)(A) material.

Of the purported Section 437g(a)(12)(A) documents, the Three–Judge District Court only cites or quotes from four such documents.[23] As the Court has observed above, AFL–CIO Plaintiffs, as litigants in this case, affirmatively presented these documents to the Court in an effort to challenge the constitutionality of BCRA. Although none of these documents were available to the public prior to this litigation, one of the them, AFL–CIO 001614–16 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.1.1), contains the script/description of an advertisement run by AFL–CIO Plaintiffs during the 1996 election cycle. The information in these documents was already made available to the public when AFL–CIO Plaintiffs ran these advertise-

ments almost seven years ago, and as a result, these documents are entitled to less protection under *Hubbard. Hubbard,* 650 F.2d at 318–20 (noting that the extent to which documents were already made available to the public is a factor when determining whether a document should be disclosed). The remaining three documents, all from the 1996 election cycle AFL–CIO 001582–84 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.1.1) contains information about a survey conducted in 1996, AFL–CIO 001702–04 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.1.1) concerns "issue" advocacy and recommends various political consultants, and AFL–CIO 005244 (Cited, Kollar–Kotelly's Opinion at Finding ¶ 2.6.1.1) suggests that the AFL–CIO should run "issue" advocacy in a particularly close election race—were deemed probative and relevant to the issues in the case by the Three–Judge District Court. These documents do not contain sensitive political information, and only the quoted portion of AFL–CIO 001702–04 will be disclosed to the public. Considering the strong public interest involved in this unique litigation and the fact that this Court has narrowly tailored this order to protect the confidentiality interests of parties and non-parties alike, AFL–CIO Plaintiffs' objections cannot be sustained under *Hubbard.* Accordingly, this information will be disclosed consistent with this Court's order.

**(g) Paul Plaintiffs**[24]

Paul Plaintiffs only object to the disclosure of the identities of two factual wit-

---

**23.** Specifically, my Findings of Fact cites or quotes from (1) AFL–CIO 001614–16 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.1.1; Leon's Opinion at Findings ¶ 298), (2) AFL–CIO 001582–84 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.1.1; Leon's Opinion at Findings ¶ 298), (3) AFL–CIO 001702–04 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.1.1; Leon's Opinion at Findings ¶ 298), and (4) AFL–CIO 005244 (Cited, Kollar–Ko-

telly's Opinion at Findings ¶ 2.6.1.1; Leon's Opinion at Findings ¶ 298).

**24.** The Paul Plaintiffs include: Representative Ron Paul, Gun Owners of America, Inc., Gun Owners of America Political Victory Fund, RealCampaignReform.org, Citizens United, Citizens United Political Victory Fund, Michael Cloud and Carla Howell.

nesses, presented to the Court in "Declaration of Anonymous Witness No. 1" and "Declaration of Anonymous Witness No. 2." Notice With Respect to Paul Pls.' Designations of Confidential Docs. and Recommendation Concerning Continued Confidentiality at 1. Paul Plaintiffs observe that at no point has a party "sought the public disclosure of the anonymous witnesses' identities." *Id.* at 2.

Because the Three–Judge District Court did not rely on the testimony of these witnesses, Paul Plaintiffs may keep their identities confidential. The Three–Judge District Court did not rely on the anonymous witnesses' assertions in formulating its opinions, and as a result, the disclosure of their identities is not necessary for the public to evaluate the substance of the Three–Judge District Court's opinions.

### (h) Republican National Committee ("RNC") Plaintiffs [25]

RNC Plaintiffs object to the disclosure of certain documents filed with the Court. *See generally* RNC Pls.' and CRP's Objections to the Unsealing of Certain Docs [hereinafter "RNC Pls.' Objections"]. Specifically, RNC Plaintiffs urge the Court to "consider lifting confidentiality only for those documents that are actually relied upon in reaching its decision and in the parties' pleadings," *id.* at 5, but also object to the disclosure of five documents relied upon by the parties in their pleadings, *see id.*, App. A. In addition, RNC Plaintiffs object to the disclosure of documents containing sensitive political strategies, *see id.*, App. B, and ask the Court to redact documents containing personal and financial information, *see id.*, App. C, D.

As indicated above, the Court will only order the disclosure of documents relied upon by the Three–Judge District Court, either as disclosed through quotation or, where necessary, through a copy of the actual document. It follows then that this Court is only entertaining the disclosure of highly probative information. As RNC Plaintiffs acknowledge, RNC Pls.' Objections at 4 (citing *National Children's Center*), the D.C. Circuit held: "A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions," *Nat'l Children's Center*, 98 F.3d at 1409.

The Three–Judge District Court only cites to one document contested by RNC Plaintiffs, RNC 0275390–96 (Quoted, Kollar–Kotelly's Opinion at Finding ¶ 2.7.10.1), and cites to a third document, RNC NM 0406326–33 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.26.4.1), which purportedly contains sensitive personal information that should be redacted.[26] This Court concludes that these documents are not protected under *Hubbard*, and therefore, must be disclosed to the extent indicated in the accompanying order. However, because the personal information contained in RNC NM 0406326–33—namely, a certified public accountant's name and contact information—will not serve to advance the public's understanding of that document, RNC Plaintiffs may redact this information before releasing it to the public. In addition, RNC Plaintiffs may redact e-mail addresses included in RNC 0221404–05.[27]

---

**25.** The RNC Plaintiffs include: the Republican National Committee, Mike Duncan, Republican Party of Colorado, Republican Party of Ohio, Republican Party of New Mexico, and Dallas County (Iowa), Republican Central Committee.

**26.** The Court commends RNC Plaintiffs for carefully indexing hundreds of documents

and for significantly narrowing the universe of contested documents.

**27.** Consistent with the accompanying order, RNC Plaintiffs need not disclose a physical copy of RNC 0275390–96 because it was quoted in my Findings of Fact.

Although these documents were obtained through discovery and would not otherwise have been available to the public, RNC Plaintiffs made a conscious and volitional decision to litigate. These documents are highly probative and, as with all documents under review in this memorandum opinion, were relied upon by the Three–Judge District Court. The public has a strong need for this information to evaluate the merits of the Three–Judge District Court's opinions—opinions that review the constitutionality of the first major overhaul of our existing campaign finance laws in more than twenty-five years. While these documents may contain information that the RNC does not want to disclose, that alone does not meet the stringent standard under *Hubbard.* RNC Plaintiffs have not established, in this particular instance, that the harm resulting from the disclosure of these documents is substantial or comparable to the disclosure of "trade secrets" in the business realm. The political strategies contained in these documents are, at most, conclusory and not of recent vintage being from the 1998 election cycle. As a result, the Court is left to conclude that RNC Plaintiffs failed to demonstrate a compelling need to keep these documents under seal contrary to "this country's strong tradition of access to judicial proceedings." *Hubbard,* 650 F.2d at 317 n. 89.

### (i) California Democratic Party Plaintiffs [28]

Of the nine individuals and entities that comprise the California Democratic Party Plaintiffs, only two filed objections with

the Court: the California Democratic Party ("CDP Plaintiff") and the California Republican Party ("CRP Plaintiff"). CRP Plaintiff, however, filed its objections with the RNC Plaintiffs.[29] *See supra* Discussion at 936–37. Therefore, the Court only entertains the objections of CDP Plaintiff here.

CDP Plaintiff "has no objection to the vast majority of its documents being unsealed subject to certain information being redacted, but does object to unsealing certain confidential documents . relating to donor information and the coordinated campaign." Objections of CDP to the Unsealing of Certain Docs. at 1–2. CDP requests that "bank account or other personal or sensitive information be redacted." *Id.* at 2. Moreover, "CDP continues to have an objection to lifting confidentiality with respect to three sets of documents," *id.,* allegedly protected under *Hubbard, id.* at 3. The second and third sets of documents, according to CDP Plaintiffs, "include sensitive fundraising and coordinated campaign planning documents," *id.,* and the first set of documents, a "fundraising 'call' list," *id.* at 4, contains "potentially sensitive personal and political information," *id.* At a minimum, CDP Plaintiffs argue that the "names and organizations of the[se] potential donors" should be redacted. *Id.*

The Three–Judge District Court has not cited or quoted from the second or third set of documents, but has quoted from the first set of documents, the "fundraising

---

**28.** The California Democratic Party Plaintiffs include: the California Democratic Party, Art Torres, Yolo County Democratic Central Committee, California Republican Party, Shawn Steel, Timothy J. Morgan, Barbara Alby, Santa Cruz County Republican Central Committee, and Douglas R. Boyd, Sr. The California Republican party filed objections with the

RNC Plaintiffs. *See supra* Discussion at 936–37.

**29.** None of the contested CRP Plaintiff documents were cited or quoted from by the Three–Judge District Court. Therefore, consistent with the rest of this opinion and the accompanying order, none of these documents will be disclosed.

'call' list," CDP 00124 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 1.77.10; Leon's Opinion at Findings ¶ 229). This Court, however, is not persuaded that the quoted portions of this document are subject to confidentiality contrary to "this country's strong tradition of access to judicial proceedings." *Hubbard*, 650 F.2d at 317 n. 89. The Three–Judge District Court only quotes a snippet of material, which does not indicate any sensitive personal information about individual donors. The quote is highly probative and is narrowly tailored to protect both CDP Plaintiff's and third party privacy interests. As a result, this material will be disclosed to the public as it appears, quoted in the Three–Judge District Court's opinion.

### (j) Adams Plaintiffs [30]

Adams Plaintiffs have waived their objections to the unsealing of all the documents that they filed with the Court. Adams Pls.' Supp. Submission Regarding the Status of Docs. Filed Under Seal at 3 ("Therefore, all materials that the *Adams* plaintiffs filed under seal should be unsealed as of the date specified in the stipulation.") (emphasis in original).

### (k) Thompson Plaintiffs [31]

Thompson Plaintiffs did not file any objections to the Three–Judge District Court's Oral Order and have thereby waived any objection to this Court's order to unseal portions of the record.

### (*l*) Defendant Intervenors [32]

Defendant Intervenors filed a memorandum, arguing that "the Court can and should—with a very few exceptions—open the record in this case to public view." Memorandum in Resp. to the Opp'ns to the Unsealing of the Record at 1. Defendant Intervenors did not object to the disclosure of testimony or documents that they supplied to the Court. *See generally id.* As a result, Defendant Intervenors have waived any objection to the Court's order to unseal portions of the record provided by Defendant Intervenors.

### (2) Non–Party Objections

As observed above, under the *Hubbard* test, the Court must take into consideration the identity of the party raising the objection. *Hubbard*, 650 F.2d at 319. Indeed, *Hubbard* observed that "the fact that [the] objection to access is made by a third party weighs in favor of non-disclosure." *Id.* at 320. Nonetheless, the D.C. Circuit did not suggest that third party status, alone, was dispositive of this inquiry. Moreover, in *Hubbard*, the D.C. Circuit did not consider the type of third party documents and testimony at issue in this case. In fact, the documents at issue in *Hubbard* are readily distinguishable from the documents the Court reviews here. In *Hubbard*, the D.C. Circuit observed that the contested documents "were not specifically referred to or examined upon during the course of [the] proceedings" and their "only relevance to the

---

**30.** The Adams Plaintiffs are Victoria Jackson Gray Adams, Carrie Bolton, Cynthia Brown, Derek Cressman, Victoria Fitzgerald, Anurada Joshi, Nancy Russell, Kate Seely–Kirk, Peter Kostmayer, Rose Taylor, Stephanie L. Wilson, California Public Interest Research Group, Massachusetts Public Interest Research Group, New Jersey Public Interest Research Group, United States Public Interest Research Group, the Fannie Lou Hamer Pro-

ject, and Association of Community Organizers for Reform Now.

**31.** The Thompson Plaintiffs are Representative Bennie G. Thompson and Representative Earl F. Hilliard.

**32.** The Defendant Intervenors are Senators John McCain, Russell Feingold, Olympia Snowe and James Jeffords and Representatives Christopher Shays and Martin Meehan.

proceedings derived from the defendants' contention that many of them were not relevant to the proceedings" at all. *Id.* at 316. Here, however, the Three–Judge District Court found the cited information—the only information this Court has decided merits disclosure—highly probative to its determination. This information does not involve peripheral matters but facts at the heart of the constitutionality of BCRA. As a result, while this Court recognizes the unique interests of third parties, it also recognizes that the public has a particularly strong right of access to the judicial documents relied upon in this case.

In some cases, however, the Court has determined that the rights of certain non-parties to this proceeding warrant additional protection, consistent with the factors expounded in *Hubbard.* In these narrow instances, this Court has left the entire quote in the Three–Judge District Court's opinion intact, but characterized the non-party in such a way as to protect its confidentiality. Subsequently, the citations accompanying these quotations—which would indicate to the public the

identity of these non-parties—have been redacted.[33] In addition, Judge Henderson has cited to portions of Government Defendants' Amended Proposed Findings of Fact and Defendant Intervenors' Proposed Findings of Fact. These documents will be disclosed to the public, but portions of these documents have been redacted because they implicate the same type of non-party privacy interests.[34]

### (a) Government Defendants [35]

In mounting their defense of the constitutionality of BCRA, Government Defendants relied extensively upon the testimony of third party witnesses, including campaign finance scholars and experts, political consultants, former candidates for public office, former members of Congress, and representatives from the Democratic Congressional Campaign Committee ("DCCC"), the Democratic Senatorial Campaign Committee ("DSCC"), the National Republican Congressional Committee ("NRCC"), and the National Republican Senatorial Committee ("NRSC").[36] As the Government Defendants observe: "This challenge to the constitutionality of

**33.** Unlike the non-party interests discussed in "(a) Government Defendants," *see infra* Discussion at 940–42, these quotations involve the internal operations and affairs of non-parties to this proceeding, and do not involve general observations about the campaign finance system. Moreover, the specific identities of these protected non-parties are not necessary for the public to evaluate the substance of the quotations. The characterizations of these protected non-parties, alone, should satisfy the public's right of access to judicial proceedings while respecting the rights of these non-parties.

**34.** The parties need not disclose the underlining documents, cited in support of Government Defendants' and Government Intervenors' Proposed Findings of Fact, as these materials are too attenuated to be deemed pertinent to the Three–Judge District Court's inquiry.

**35.** The Government Defendants include: the Federal Election Commission; the United States of America; the United States Depart-

ment of Justice; the Federal Communications Commission; John Ashcroft, in his official capacity as Attorney General of the United States of America; and David M. Mason, Karl J. Sandstrom, Danny L. McDonald, Bradley A. Smith, Scott E. Thomas and Michael E. Toner, in their official capacities as Commissioners of the FEC.

The Government Defendants submitted third party documents and testimony, filed under seal, to bolster their defense. According to the Government Defendants, the unsealing of this information could prejudice these third party witnesses and the Government's ability to obtain voluntary witnesses in the future. Mot. of the DOJ and FEC to Maintain Certain Portions of the Record Under Seal and Memorandum in Support Thereof at 1–3. As a result, the Court will entertain these objections as if they had been filed by non-parties in this litigation.

**36.** Non-party NRSC also filed separate objections with the Court, entertained below. *See infra* Discussion at 943–44.

campaign finance regulation in BCRA is not typical litigation." Mot. of DOJ and FEC to Maintain Certain Portions of the Record Under Seal and Memorandum in Support Thereof at 8 [hereinafter "Gov't Defs.' Objections"]. Defendants continue by noting that their "defense of BCRA was dependent upon obtaining evidence of *how actors in the campaign finance system engaged in practices* related to [the] subjects that BCRA was intended to regulate." *Id.* (emphasis added). In the Court's view, however, this is precisely why the public's right to access is particularly compelling in this case.

In *Hubbard,* the D.C. Circuit noted the apocalyptic warnings of James Madison: "A popular Government without proper information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy: or perhaps both.... A people who mean to be their own Governors, must arm themselves with the power which knowledge gives." *Hubbard,* 650 F.2d at 315 n. 79 (quoting James Madison); *see also id.* (noting the importance of providing access to "information concerning the operation of the government"). The Court agrees with Defendants, this case cannot be characterized as "typical litigation;" it involves the fundamental operations of our republican form of government. The Court concludes, however, that the public's right to access is unquestionably strong here, and is not merely limited to the Three–Judge District Court's holdings. The law—and the judiciary that expounds its principles—

is dependent upon reason; decisions must be grounded in logic and, where appropriate, substantiated by the facts of each particular case. In order for the public to evaluate the merits of the Three–Judge District Court's opinions, they must be provided with as much of the record relied upon by the Court that is legally permissible to disclose.[37]

Government Defendants put forth two basic arguments: (1) "[u]nsealing the testimony or otherwise making it publicly available could have adverse effects on the witnesses professionally," Gov't Defs.' Objections at 10, and (2) the disclosure of this voluntary testimony "could seriously prejudice the government's ability to obtain volunteer testimony on sensitive ... matters ... in the future," *id.* at 10–11.[38] In addition, the Court notes that, as third parties, these witnesses are afforded greater protections under *Hubbard. See Hubbard,* 650 F.2d at 320; *see also supra* Discussion at 938. Nonetheless, given the "strong tradition of access to judicial proceedings," *Hubbard,* 650 F.2d at 317 n. 89, and based on the nature of the testimony and the fact that this Court has limited disclosure to the portions relied upon by the Three–Judge District Court, this Court will require Government Defendants to disclose the testimony of these third-party witnesses in accordance with the accompanying order.

While the testimony of third-party witnesses is accorded greater protection un-

---

37. In *Johnson,* the D.C. Circuit noted that a protective "order should be no broader than is necessary to protect those specific interests identified as in need of protection." *Johnson,* 951 F.2d at 1278.

38. Government Defendants made no effort to distinguish between those portions of nonparty testimony that were and were not protected under *Hubbard. See* Gov't Defs.' Objections at 1 ("The Department of Justice and the Federal Election Commission ... oppose

the wholesale unsealing of the record."). In many instances, the Court had to compare redacted and un-redacted copies of Defendants' Amended Proposed Findings of Fact to ascertain which portions of the testimony that Government Defendants did and did not contest disclosing, despite the Three–Judge District Court's Oral Order, which notified the parties that they were supposed to raise specific objections regarding the portions of the record that they wanted to remain under seal. *See* Tr. at 387–396.

der *Hubbard*, the right of confidentiality is not absolute. The Court has carefully reviewed the Three–Judge District Court's opinions and taken into consideration the nature of the information provided by these witnesses. In the vast majority of instances, the testimony cited or relied upon by the Three–Judge District Court contains general observations about our existing campaign finance system. Certainly this portion of the testimony is afforded no special protection under *Hubbard*.[39] The remaining cited testimony, which mentions specific examples of campaign activities under pre-BCRA law, can be divided into two categories: (1) testimony provided by political consultants, former candidates for public office, and former members of Congress[40] and (2) declarations made by representatives from the DCCC, DSCC, NRCC, and NRSC. None of the testimony in the first category refers to the activities of a political consultant's own clients or client-related activities; nor does it describe a former candidate's or a former member of Congress's own campaign activities; nor can any of this information be characterized as a "trade secret." The risk of harm from the disclosure of this highly probative information is minimal. As for the second group, it is difficult to characterize any of the information relied upon by the Three–Judge District Court as "politically sensitive" material. The testimony of representatives from each of the four major-party congressional campaign committees suggests that they all engage in the same general practices. It is a stretch to call the common practices of the two major

political parties "trade secrets" or "politically sensitive" activities, and it is highly unlikely that any harm will result from the disclosure of this common knowledge.

The Court also finds Defendants' second argument—that the Government will have difficulty obtaining third-party witnesses in the future based on this Court's decision—unpersuasive in this particular instance. First, the plain language of the Agreed Protective Order made it clear that the Court retained the power to review documents submitted to it under seal. *See, e.g.,* Agreed Protective Order ¶ 25 ("Notwithstanding anything to the contrary that may be set forth herein, the parties understand that the Court shall retain the authority to modify this Order upon good cause shown."). Second, by narrowly tailoring this disclosure order to only the most probative information, the Court carefully fashioned this order to protect "both the public interest in access and the private interest in non-disclosure." *Hubbard*, 650 F.2d at 324–25. In future cases, the government can assure voluntary witnesses that their interests will be protected to the full extent provided for under the agreed protective order and the applicable circuit's law—in this case, *Hubbard*. The Court and the American public, nonetheless, owe a great deal of gratitude to these voluntary witnesses for their willingness to come forward and provide critical information about the way our existing campaign finance system operates.

### (b) American Financial Group

Non-party American Financial Group ("AFG") objects to "unsealing confidential documents insofar as they pertain to docu-

---

**39.** In fact, Government Defendants already disclosed much of this information in their redacted Amended Proposed Findings of Fact. As a result, this information is accorded even less protection under *Hubbard* because it has already been made available to the public. *See Hubbard*, 650 F.2d at 318–20.

**40.** The Government Defendants also disclosed large portions of this testimony in the redacted Amended Proposed Findings of Fact. *See supra* note 39.

ments produced by AFG." Objections of Non–Party AFG to the Unsealing of Confidential Docs. at 1. Because the Three–Judge District Court did not cite or quote from any AFG documents, this Court will not order their disclosure.

**(c) AT & T**

Non-party AT & T filed a letter with the Court, preserving its objections to the disclosure of all documents and testimony that it filed with the Court. *See* AT & T Letter at 1 (dated Dec. 17, 2002). Of the documents and testimony filed with the Court, however, I cite to only one AT & T document in my Findings of Fact, ATT 000018 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.77.4). This Court concludes that this document is not protected under *Hubbard,* and it will be disclosed consistent with the accompanying order.

The cited document, ATT 000018, does not represent the internal communications or business strategies of AT & T executives, rather it is an invitation to attend the 1999 Republican House–Senate Dinner. The fact that an AT & T executive received this invitation is not a characterization of AT & T or a reflection of its political activities. The citation merely seeks to demonstrate that corporate executives receive invitations to such events at the behest of the major political parties. Because this document does not involve the internal strategies or "trade secrets" of AT & T, and because this document is reflective of the major parties', and not AT & T's, activities, the Court believes the disclosure of this document is consistent with the factors expounded in *Hubbard.*

**(d) Brennan Center for Justice**

Non-parties Brennan Center for Justice and Professor Kenneth M. Goldstein (collectively, "Non-parties Brennan Center")

submitted limited objections to the Three–Judge District Court's Oral Order to unseal the record in this case. Objection of Brennan Center and Prof. Kenneth M. Goldstein to Lifting Confidentiality at 1. Specifically, Non-parties Brennan Center object to the disclosure of a CD–ROM database supplied to the Court. *Id.* This Court observes that the actual database was not relied upon by the Three–Judge District Court and, therefore, will not be released to the public. Subsequently, and consistent with the accompanying order, this information will not be disclosed to the public.

**(e) National Media, Inc., and Citizens for Better Medicare**

Non-parties National Media, Inc. ("NMI") and Citizens for Better Medicare ("CBM") "object[ ] to the unsealing of documents and testimony." CBM Objections to the Unsealing of Docs. and Testimony at 5 [hereinafter "CBM Objections"]; NMI Objections to the Unsealing of Docs. and Testimony at 5 [hereafter "NMI Objections"]. According to these non-parties, the documents and testimony that NMI and CBM contest "go to the heart of both CBM's and NMI's strategies and tactics for creating and implementing CBM's political and communication/advertising campaigns." NMI Objections at 2. In addition, this material discloses "CBM's strategies and tactics for creating, implementing and funding issue advocacy and grassroots lobbying campaigns on the important issue of meaningful market-based reforms of the nation's Medicare system." CBM Objections at 2.

The Three–Judge District Court's opinions, however, do not disclose information related to "strategies or tactics." For example, the portions of Timothy C. Ryan's deposition quoted or cited in the opinions [41]

---

**41.** The Three–Judge District Court's opinions cite or quote from Ryan's deposition at the

following places: Ryan Dep. at 10–11 (Quot-

verify the amount of money CBM spent in 1999 and 2000 on television advertising and the source of CBM's funding—information that is available to the public through other avenues. In addition, some of these cited or quoted portions contained characterizations about the intentions of CBM with regard to "issue advocacy." These revelations are not strategic in nature or likely to prejudice CBM; they merely suggest that CBM viewed these advertisements as a means of shaping the policy debate, and not campaigning for or against any particular candidate. This viewpoint is consistent with several of the litigants' contentions and cannot be characterized as a political strategy. The three documents quoted or cited in my Findings of Fact, likewise, do not contain strategies.[42] The first document merely discloses the total amount of contributions CBM received from pharmaceutical companies; the second document is a description of how CBM holds itself out to the public, and it is accessible by the public; and the third document characterizes CBM's advertising strategies for the 2000 elections, but the quoted portion—and hence, the only portion of the document disclosed pursuant to the order accompanying this opinion—does not mention specific political strategies. Finally, the portions of Alex Castellanos's deposition cited by the Three–Judge District Court in my Findings of Fact divulge his characterizations about the advertisements NMI ran.[43] This testimony does not disclose specific political strategies and it is unlikely to prejudice NMI. The public's strong right of access cannot be overstated here. This information was deemed highly relevant by the Three–Judge District Court. As a result, this Court will order the disclosure of this information, consistent with the terms in the accompanying order.

## (f) National Republican Senatorial Committee [44]

Non-party National Republican Senatorial Committee ("NRSC") requests that the Court "maintain the confidentiality of all documents that the NRSC voluntarily submitted to the government." Objections of Non–Party NRSC to Lifting the Confi-

ed, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.1), 13 (Quoted and Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.1), 13–15 (Cited in Henderson's Findings of Fact at Finding ¶ 35), 15 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.4), 42 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.2), 68–72 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.3, 2.6.3.4; Leon's Opinion at Findings ¶ 301), 74–75 (Quoted, Kollar–Kotelly's Opinion at Finding ¶ 2.11.4.4), 76–77 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.8.3.4 n.98), 79–85 (Cited, Kollar–Kotelly's Opinion at Finding ¶ 2.6.3.3; Leon's Opinion at Findings ¶ 301).

42. Specifically, the opinion quotes the following documents: CBM 0029 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.1; Leon's Opinion at Findings ¶ 301); *CBM Who We Are* ... (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.1; Leon's Opinion at Findings ¶ 301); USA–CBM 0004 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.3).

43. Castellanos Dep. 63–66 (Cited, Kollar–Kotelly's Opinion at Findings ¶¶ 2.6.3.3, 2.6.3.4; Leon's Opinion at Findings ¶ 301), 94 and 95 through line 12 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.3), 103–04 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.2), 111–12 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.26.7.3; Leon's Opinion at Findings ¶ 144).

44. The Court already entertained Government Defendant's objections on behalf of NRSC above, *see supra* Discussion at ————, with regard to the declaration of Alexander N. Vogel, General Counsel to NRSC. Non-party NRSC also filed its own objections to the disclosure of NRSC documents filed with the Court. *See generally* Objections of Non–Party NRSC to Lifting the Confidentiality of Agreed Protective Order to Certain Docs. Therefore, the Court will entertain NRSC's objections to the disclosure of these contested documents here.

dentiality of Agreed Protective Order to Certain Docs. at 2. Specifically, NRSC requested that certain documents, listed in Appendix A of its Objections, remain confidential. *Id.* at 3, n. 1. These documents "contain sensitive political information, including the fundraising and campaign strategies that the NRSC has used in recent years." *Id.* at 7.

The Three–Judge District Court only cites to one NRSC document in its opinions, NRSC 066–000009 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.53; Leon's Opinion at Findings ¶ 222), and although NRSC objects to the disclosure of all of its documents, the Court notes that this particular document was not listed among the documents that NRSC explicitly contested. *See id.*, App. A. This document, a draft letter, invites members of the "High Technology industry" to attend the 1998 Republican House–Senate Dinner. NRSC 066–000009. Beyond the fact that it is a draft letter, it does not represent the internal correspondence of NRSC, nor does it contain "sensitive political strategies." The letter is a solicitation to attend a fundraising dinner, and as such, it is sent out to individuals and entities that may do with it what they choose. While these sorts of letters are not sent out to the general public, they are sent out to third parties to request their attendance at a particular event. Non-party NRSC can only claim a reduced privacy interest in this document. Considering that this information was deemed probative by the Three–Judge District Court and "this country's strong tradition of access to judicial proceedings," *Hubbard,* 650 F.2d at 317 n. 89, coupled with NRSC's reduced

privacy interests, the Court will order the disclosure of this document, as it is quoted by the Three–Judge District Court in its opinions.

### (g) PhRMA [45]

Non-party PhRMA "objects to the unsealing of any document produced by PhRMA in connection with this [proceeding]." PhRMA Objections to the Unsealing of Docs. at 1. PhRMA notes that "[m]any of the documents produced . . . are politically sensitive and could result in . . . fallout or injury." *Id.* at 2. PhRMA also contends that it was not provided with formal notice by the Three–Judge District Court of its Oral Order to consider unsealing the record in these proceedings. *Id.* Nonetheless, PhRMA was obviously aware of the Three–Judge District Court's order and filed this objection.

In four separate instances,[46] I quoted testimony or a document provided by PhRMA in my Findings of Fact. This material does not fall under the limited disclosure protections accorded by *Hubbard,* and therefore, this material will be disclosed consistent with the terms of the accompanying order.

The document quoted in my Findings of Fact merely confirms that PhRMA contributed money to Citizens for Better Medicare. This information is no secret and merely validates the Three–Judge District Court's proposition that PhRMA sponsors Citizens for Better Medicare. Moreover, because the Three–Judge District Court quoted directly from the source, the Court will not require the disclosure of a physical copy of this docu-

---

**45.** Pharmaceutical Research & Manufacturers of America ("PhRMA").

**46.** Specifically, the Three–Judge District Court opinions include: (1) PH 0379 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.1; Leon's Opinion at Findings ¶ 301), (2) Bello

Dep. at 39 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 1.80.1), (3) Bello Dep. at 82 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.77.7; Leon's Opinion at Findings ¶ 226), and (4) Bello Dep. at 149–50 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 2.6.3.3).

ment. As for the remaining information cited in my Findings of Fact, this testimony was deemed highly probative; it goes directly to the heart of this litigation. Although Non-party PhRMA has a strong privacy interest here, the public has an equally strong right of access to the documents relied upon in this particular judicial proceeding. PhRMA has not demonstrated that any harm will result from the disclosure of this particular testimony. Furthermore, the disclosure of this information, limited to four instances where this material was deemed highly probative, does not unveil sensitive political strategies or trade secrets, and the risk of "fallout or injury" in this particular instance is low.

### (h) Progressive Strategies, LLC

Non-party Progressive Strategies, LLC, "objects to the lifting of confidentiality under, or other rescission or abrogation, by the Court, of the Agreed Protective Order." Objections of Non–Party Progressive Strategies, LLC to Lifting of Confidentiality Under Agreed Protective Order at 1. The materials filed under the Agreed Protective Order include "the transcript of the Deposition of Michael Scott Lux taken by RNC on August 26, 2002[,] and certain exhibits thereto, consisting of documents" provided by Progressive Strategies. *Id.*

The Three–Judge District Court only cites to one of the documents provided as an exhibit to Lux's deposition.[47] In addition, the opinions reference two portions of Lux's testimony.[48] None of this cited material relates to Progressive Strategies's "agenda, goals and objectives, [or] to ... communications with and conferences held with its clients." *Id.* Indeed, the document cited by the Three–Judge District Court in

its opinions consists of a copy of Progressive Strategies's Internet site, which is already available to and accessible by the public. Moreover, Lux's testimony was merely cited to substantiate his qualifications, Lux Dep. Ex. 2 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.88), *id.* at 5, 16 (Cited, Henderson's Opinion at note 118), which is also available on Progressive Strategies's Internet site in the form of biographical information, or because it made general observations about the campaign finance system, *see* Lux Dep. at 50–52 (Quoted, Kollar–Kotelly's Opinion at Finding ¶ 1.88 and Henderson's Findings of Fact at Finding ¶ 79.d.(1)). This material does not warrant confidentiality contrary to "this country's strong tradition of access to judicial proceedings." *Hubbard,* 650 F.2d at 317 n. 89. It does not contain sensitive political or strategic information, and it is highly unlikely to prejudice Progressive Strategies. As a result, this information will be disclosed consistent with the terms of the order accompanying this Memorandum Opinion.

### IV. CONCLUSION

For the reasons stated above, and consistent with the Court's broad discretion, the Court will make the Three–Judge District Court's opinions available to the public, with the exception of a few narrow instances where the Court has redacted the source of the cited material to protect the confidentiality of a non-party to these proceedings. All documents quoted in the Three–Judge District Court's opinions will be made available to the public as they appear, quoted in the opinions. All other documents cited in the opinions shall be disclosed, based on the level of specificity

---

**47.** Lux Dep. Ex. 2 (Cited, Kollar–Kotelly's Opinion at Findings ¶ 1.88).

**48.** Lux Dep. at 50–52 (Quoted, Kollar–Kotelly's Opinion at Findings ¶ 1.88 and Henderson's Findings of Fact at Finding ¶ 79.d.(1)).

indicated by the citation, with the exception of the Defendants' Amended Proposed Findings of Fact and Defendant Intervenors' Proposed Findings of Fact, portions of which have been redacted. An order detailing these obligations will accompany this opinion.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, and consistent with the broad discretion granted to this Court, it is, this 2nd of May, 2003, hereby,

**ORDERED** that the parties responsible for filing the evidentiary record, inclusive of documents and testimony, shall re-file, as part of the public record, an unredacted version of the previously sealed portions of the record, provided that:

1. The Three–Judge District Court relies on the source to support a proposition cited in its Opinions or Findings of Fact,

2. The Court has not otherwise indicated, by sealing the citation, that the supporting document should remain under seal, and

3. The Court has not quoted directly from the source, relieving the party in question of its obligation to disclose a physical copy of the cited material; and it is further

**ORDERED** that the parties responsible for re-filing portions of the evidentiary record, inclusive of documents and testimony, relied upon by the Three–Judge District Court need only disclose the precise portion of the source indicated in the citation; and it is further

**ORDERED** that personal information, including telephone and fax numbers, bank account and credit card information, and e-mail and general mailing addresses, may be redacted from the disclosed documents; and it is further

**ORDERED** that, in regard to Judge Henderson's Opinion, where she cites to portions of Defendants' Amended Proposed Findings of Fact and Defendant Intervenors' Proposed Findings of Fact, Defendant and Defendant Intervenors shall redact the following portions of the cited material:

Defendants' Amended Proposed Findings of Fact:

- ¶ 95
- ¶ 100
- ¶ 123, lines 5, 6, and line 7 through the identification of the sealed document.
- ¶ 142
- ¶ 164
- ¶ 676

Defendant Intervenors' Proposed Findings of Fact:

- ¶ 27, line 11, beginning with the identification of the document, and continuing until the end of the finding;

and it is further

**ORDERED** that the following Findings in Judge Kollar–Kotelly's Findings of Fact contain documents that have been sealed and shall not be disclosed by the parties, as indicated in the Findings:

- ¶ 171.3
- ¶ 1.74.3
- ¶ 1.78.1
- ¶ 2.6.5.1

and it is further

**ORDERED** that the following Findings in Judge Leon's Findings of Fact contain documents that have been sealed and shall not be disclosed by the parties as indicated in the Findings:

- ¶ 34

- ¶ 238
- ¶ 240

and it is further

**ORDERED** that the parties shall re-file with the Court on the public record unredacted briefs disclosing only what has been cited in the Opinions of the Three–Judge District Court and not sealed consistent with the rest of this Order. If not cited to by the Three–Judge District Court in its Opinions, the evidentiary references in the briefs shall remain under seal; and it is further

**ORDERED** that, where the parties filed unsealed exhibits and evidentiary records with the Court in conjunction with sealed material, the parties shall segregate those portions that were not filed under seal and refile them with the Court as part of the public record; and it is further

**ORDERED** that the parties responsible for re-filing documents and the evidentiary record relied upon by the Three–Judge District Court, including any briefings, evidentiary records, or findings of fact originally filed with the Court under seal, shall comply with this Order no later than ten (10) days after the Three–Judge District Court has released its decision.

**SO ORDERED.**